This is a suit for an accounting and to recover the balance of premium claimed to be due the North Dakota workmen's compensation fund from defendants C.M. Padgett and the Padgett Company. The Northern Trust Company is made defendant because it was surety on the bond of the Padgett Company and C.M. Padgett, contractors, hereinafter referred to as the contractor. The Northern Trust Company demurred on the ground that the complaint does not state facts sufficient to constitute a cause of action against the surety. *Page 213 
The sole question is whether the surety bond covered the premiums payable to the compensation fund by the contractor.
The amended complaint alleges that the proceeding is brought pursuant to chapter 162 of the Session Laws of 1919 for and in behalf of the workmen's compensation fund.
Omitting purely formal allegations, the complaint alleges that the contractor was, at all times material, engaged in a hazardous employment, within the compensation law; that the contractor became insured with the bureau on or about December 16, 1922; that the contractor employed a large number of men in hazardous employment, to wit: in road construction, graveling and grading, but that the plaintiff has been unable to obtain from the contractor either a report as to the pay-roll or a permission to audit the records and books of the contractor during the period in question, and that, consequently, plaintiff is without actual knowledge as to the amount of the pay-roll and cannot ascertain the same unless the court orders an accounting for that purpose. That on or about January 23, 1923, the contractor engaged in the work of constructing roads and made contracts in its own name for grading and construction; that in September, 1923, the contractor filed with the bureau a supplemental pay-roll, reporting therein a largely increased estimated pay-roll for the year in question, and that on September 20, 1923, the bureau determined the amount of premium due, the same having been fixed on information reported to the plaintiff by the contractor in the aforesaid supplemental pay-roll report. That the bureau, on the last named date, notified the contractor that the amount of premium due was $405.75 and on September 22, 1923, the contractor received such notice. That no part of such premium has been paid except $39.50, paid on or about the 16th of December, 1922; that the contractor is in default in payment thereof together with a penalty of $25 for the first period of thirty days following the default, and 1 per cent additional on $405.75 for each period of thirty days, or major fraction thereof following the first period of thirty days. That on April 3, 1924, the contractor again reported to the bureau, after threats to sue, an alleged actual pay-roll for the period from December 16, 1922, to December 16, 1923, showing a very substantial increase over the original estimate and the supplemental report referred to previously in the complaint. Then follow allegations that the contractor furnished board *Page 214 
and lodging to its employees with the claim by the bureau that such board and lodging is wages and that the value thereof should be calculated in the pay-roll. Plaintiff alleges that the actual pay-roll of the contractor is much in excess of that given the bureau in April, 1924, and that, notwithstanding repeated demands made by the bureau upon the contractor to audit the books and records of the pay-roll for the period, the latter refuses to consent to or permit an audit.
It is then alleged that the Northern Trust Company at all times material has been and now is a surety on the bond of the contractor covering all the contracts and road work during the year commencing December 16, 1922; and that such surety became bound to the state of North Dakota and "to any person or persons performing any labor or services or furnishing any material used in the performance of the terms and conditions of each of said contracts in a sum in the case of each contract equal to the amount of said contractor's bid." The condition of the bond is alleged in the complaint and so far as material is as follows:
"Now THEREFORE, the condition of the foregoing obligation is such that if the said principal shall well, truly and faithfully comply with and perform all the terms, covenants and conditions of said contract, on his part to be kept and performed according to the terms and tenor of said contract, and shall protect the said State of North Dakota and any person or persons performing any labor or services or furnishing material to be used in the performance of the terms and conditions of this contract against any loss and shall pay any excess of cost as provided in said contract, and all amounts, damages, costs, judgments which may be recovered against said state or its officers or agents, or which the said state of North Dakota may be called upon to pay to any person or corporation by reason of any damages arising or growing out of the doing of said work or the repair thereof or the manner of doing same, or the neglect of the said principal or his agents or servants, or the improper performance of the said work by the said principal or his servants or agents, or from any other cause; and the above bounden principal, his heirs, executors or administrators or assigns, shall and do well and truly pay or cause to be paid the wages stipulated and agreed to be paid to each and every laborer employed by the said principal or his agents, and shall well and truly pay for any and all material *Page 215 
for which payment under terms of this contract is to be made by it, then this obligation is null and void; otherwise to remain in full force and virtue."
It is alleged that the obligations on which the appealing defendant is a surety are bonds for the performance of certain numbered contracts filed with the North Dakota state highway commission; that the premium demanded is premium due and unpaid the North Dakota workmen's compensation fund for workmen's compensation insurance for laborers working on contracts for the faithful performance of which the Northern Trust Company is a surety on the contractor's bonds. It is alleged that in each of the contractor's agreements the following proposal appears and is a part of the contract; "to comply with the requirements of the workmen's compensation act (known as H.B. 56) enacted by the 16th Legislative Assembly, in 1919." It is then alleged that, notwithstanding notice and demand, the Northern Trust Company has refused to pay the premium. There are other allegations which we do not deem material to the question at issue. The prayer is that the contractor be required to account to the plaintiff for such sums as shall be due, based upon the pay-roll, to show what the pay-rolls are, and to make a full and complete accounting between the parties; that the court ascertain the amount due the plaintiff from the contractor and render judgment therefor, together with such penalties as shall have accrued, by operation of law, because of the nonpayment of the premium; and for such other and further relief as shall be necessary. There is no allegation that the insurance was not at all times in full force.
The demurrer was overruled and in due time the Northern Trust Company perfected this appeal.
The workmen's compensation bureau takes the position that the phrase in the contractor's bond "labor, services or materials," includes premiums payable by the contractor to the workmen's compensation fund. It is alleged, as has been shown, that the contractor had partly complied with the workmen's compensation law by reporting a pay-roll and paying a part of the calculated premium; it appears, however, that a dispute arose between the employer and the bureau as to the amount of the pay-roll and as to whether board and lodging should be regarded as wages. The bureau contends that the surety obligated itself, by the terms of the bond, to make full payment of the premium to the workmen's *Page 216 
compensation bureau, in the event that the contractor failed in that regard. As originally commenced, the action was one at law against the contractors and the surety upon the bond, to recover specific amounts alleged to be due the bureau; by the amended complaint the proceeding is converted into an equitable action for an accounting and to recover premiums and penalties which, upon such accounting, may be found to be due.
Section 6, chapter 131, Sess. Laws 1917, requires that the successful bidder shall furnish a bond in such amount as may be determined by the state engineer, subject to the approval of the state highway commission. Such a bond was furnished and approved by the commission. The material conditions have been set forth.
The conditions of the bond furnished the measure of the surety's liability. The surety underwrites performance of the contract by the principal to the end that neither the State nor any person performing labor or services or furnishing material to be used in the performance of the agreement, shall suffer loss. Following this general recital of the purpose of the bond there is a specific enumeration of the particular circumstances in which liability on the part of the surety may arise. The suretyship contract gives rise to an obligation to pay: (a) any excess of cost as provided in the agreement between the contractor and the highway commission; (b) damages or judgments which the state, its officers or agents may be called upon to pay third persons by reason of the manner in which the principal did or failed to do the work; (c) stipulated wages to every laborer employed by the principal; and (d) the cost of all materials for which the principal by the terms of the contract, should pay. Can we spell out of the language of this condition an intention that the surety should become liable with the principal for the payment of the premium due the workmen's compensation fund to the complete satisfaction of the bureau? Is payment of the premium in compliance with the act one of the "conditions" of the contract?
Counsel for the bureau says in his brief: "An employer complies with the workmen's compensation act by filing an application, receiving a notice to pay premium from the bureau, and making apreliminary payment of premium for the service of compensation insurance." But the complaint alleges that all these things were done. A preliminary *Page 217 
payment was made, but the full amount of the premium claimed by the bureau was not paid. Indeed, the complaint shows that the amount of such premium is not known to the bureau.
The workmen's compensation fund is not synonymous with the state of North Dakota; nor is the bureau the state of North Dakota. The claims against the fund are not claims against the State; and the fund itself is not a state fund. Bordson v. North Dakota Workmen's Comp. Bureau, 49 N.D. 534, 191 N.W. 842.
The contract here was with the highway commission. It is not suggested that the commission is dissatisfied with the performance of the contract by the principal. Obviously, the highway commission is not liable to the bureau because of the failure of the contractor to pay the full premium. Indeed, it is self-evident that the stipulation in the principal contract — to comply with the requirements of the compensation act — in no manner increased the obligation of the contractor. Wholly without regard to that proposal, he was bound, under pain of severe penalties, to obey the requirements of this as well as of any and every other law. As well might he have stipulated that he would obey the rules of the road, that the corporation would comply with the law relating to the income tax, corporate reports and returns, etc. The contractor had no choice but to obey the law; his duty in that behalf was not contractual in character; and if he failed in that regard, he must, as in other cases, face the penalties of disobedience.
There is no express promise by the surety to pay the premium now claimed due. The promise is to pay those who furnish labor, services and materials and to protect the state of North Dakota from loss. The bureau now says that the contract was made expressly for its benefit, within § 5841, Comp. Laws 1913, and that it may recover the premium, just as any laborer or materialman might recover against the surety, had payment for labor or materials not been made.
In 1925 the legislature passed a law, chapter 96, Sess. Laws 1925, requiring a provision to be inserted in the bond of every contractor doing work for the state to the effect that the contractor will truly report his pay-roll expenditures to the compensation bureau and pay the premium thereon before the commencement of the work under the contract.
Counsel for the bureau quotes extensively from Building Contractors' Limited Mut. Liability Ins. Co. v. Southern Surety Co. 185 Wis. 83, *Page 218 
200 N.W. 770. As we read that decision and the governing statutes, we do not believe the Wisconsin precedents afford assistance in the solution of the legal question here presented. The Wisconsin Compensation Law, being chapter 110A, Wisconsin Statutes 1915, is different in principle from the North Dakota act. For one thing, it is an elective act, and not compulsory like ours. If the employer elects not to comply, he is deprived of certain common-law defenses; if he complies, he is not subjected to the provisions of the act relating to liability for injuries. The act makes the state, municipalities and public corporations, employers, within the statute; the law specifically provides that the employer shall be liable for compensation to an employee of a contractor or subcontractor who has not complied with the compensation provisions of the law; and § 2394-7, subdivision 1, provides that the state or any municipality "may require a bond from a contractor to protect the state, county or municipality against compensation to employees of such contractor or employee of a subcontractor under him." While no reference is made to this statute in the opinion of the court, supra, it must be presumed that the court had it in mind, although it is merely said that the board of regents of the normal school and the surety, could make a contract "broader than the statute," citing 18 A.L.R. 1227 and note. We have, therefore, in the Wisconsin case a situation where the state would become liable to employees in case the contractor failed to bring himself within the local compensation law; and, in addition, an express statutory authorization to the state and municipal corporations to require a bond of the contractor to protect the state against compensation to employees of the former. It is submitted that the situation presented in the case at bar is essentially different, both with respect to the facts and the pertinent statutes. The bond in the Wisconsin case was clearly broad enough to cover liability to pay the premium, was expressly authorized by the statute, and was necessary in order to afford full protection to the State.
After careful consideration of the arguments of counsel, of the authorities cited in the briefs, and of the terms and conditions of the surety contract, as they appear in the complaint, we have reached the conclusion that the demurrer should have been sustained. We do not believe that a reasonable construction of the undertaking of the surety justifies a holding that the stipulation on the part of the contractor to *Page 219 
comply with the compensation law was, in any legal sense, made for the benefit of the bureau. It must not be overlooked that the surety is a favorite of the law and has the right to stand upon the strict terms of his obligation when such terms have been ascertained. This rule is generally recognized by the courts and is applicable in all circumstances. 1 Brandt, Suretyship 
Guaranty, § 106. We think that it was not within the contemplation of the parties at the time the contract of suretyship was made, or at the time the contract was made with the highway commission, that the surety be bound to pay the premium in the event of disagreement between the bureau and the contractor as to the amount of the premium, and consequent nonpayment of a portion or the whole thereof. We are satisfied from all the circumstances to which reference has been made that it was the intention of the highway commission and of the contractor to exact compliance with the compensation law in order to make certain that employees of the contractor would at all times be insured within the provisions of the law. This purpose appears to have been fully accomplished; employees of the contractor were at all times protected under the compensation act. There is no allegation that the insurance was cancelled because of the failure of the contractor to pay the full premium. We think that the purpose of the parties was fully accomplished and the protection intended to be accorded the employees of the contractor by inserting this stipulation in the contract, was fully realized.
Section 5841, Comp. Laws 1913, which provides that a contract made expressly for the benefit of a third person may be enforced by him before rescission, does not, in our judgment, in any manner aid the bureau. Wherever such a statute is in force, or where contracts for the benefit of third persons, from whom no consideration flows, may be enforced by the beneficiary, the rule is settled that "the mere fact that a third party may derive a benefit, purely incidental and not within the contemplation of the parties, from the performance of a contract, does not entitle him to maintain an action thereon in his own name. . . ." Farmers State Bank v. Anton, 51 N.D. 202, 199 N.W. 582, ¶ 4 of syllabus. We are satisfied that the benefit to the bureau from the stipulation in the contractor's agreement with the highway commission was incidental, within the above rule, and was not within the contemplation of the parties at the time of the execution of that instrument. We think *Page 220 
it would be a wholly unjustifiable perversion of language to construe the terms of the undertaking so as to obligate the surety to pay the premium to the bureau in the circumstances disclosed in the record. The legislative assembly appears to have recognized the inadequacy of existing legislation, with respect to compelling recalcitrant employers to comply with the act, by enacting, in 1925, the law to which reference has been made.
It follows that the order of the trial court overruling the demurrer of the surety to the complaint must be reversed. The demurrer should have been sustained. It is so ordered.
CHRISTIANSON, Ch. J., and BIRDZELL, NUESSLE, and BURKE, JJ., concur.