[File No. 7232]

HANS NARVESON, Respondent, v. HOWARD .G. SCHMID
and Gudrun Schmid, Appellants.

(46 NW2d 288)

Opinion filed February 10, 1951

*Butterwick & Butterwick,* for appellants.

*Sinness & Duffy,* for respondent.

GRIMSON, J. The plaintiff brings this action to recover on an account for seed grain furnished his son, Horace. He brings the action against the defendants as sureties on an undertaking executed by them to release the seed lien he had filed against the grain raised from the seed he had furnished. The complaint states that Clarence Schmid, Harold W. Schmid and Jacob Schmid were the owners of certain land in Benson County on which the grain was raised and that Horace Narveson farmed said land during the 1948 crop season. That it is the custom in North Dakota that when land is farmed on half crop basis the owner of the land furnishes the seed. That the plaintiff furnished 75 bu. of wheat valued at $225.00, 21 bu. of barley, valued at $52.50 and 29 bu. of flax, valued at $229.50 for seed on said land. That from said seed there was raised on the land a crop of wheat, barley and flax of a value in excess of $4000.00. That the plaintiff duly filed a seed lien against said grain on June 21, 1948. That on Sept. 28, 1948 the defendants filed an undertaking for the purpose of discharging said lien conditioned that they would pay to plaintiff any sum of money for which the plaintiff might obtain judgment on account of said lien. That no part of said lien claim has been paid.

To this complaint the defendants answer with a general denial except that they admit the ownership of the land. They claim that Horace Narveson, in the fall of 1947, entered into an oral contract for the purchase of the land and went into possession thereunder, seeded the grain in the spring of 1948 and remained in possession under a claim of ownership until about June 21, 1948. That said oral agreement was afterwards repudiated by Horace and a settlement made for the harvesting

818

and disposition of the crops whereby defendants received half of the crop and paid half of the thresh bill. They specifically deny that the plaintiff had any agreement with them to furnish seed and deny the validity of the seed lien. They admit that in the settlement the owners flatly refused to pay for the seed.

The case was tried as a law action to the jury. Upon the commencement of the taking of testimony the defendants objected to the introduction of any evidence on the grounds that the complaint failed to state facts sufficient to constitute a cause of action against the defendants, the specific grounds being that the defendants are sureties, that the conditions of this bond are that "the sureties will pay any judgment which Hans Narveson may obtain against the two Schmid boys and Jake Schmid (the owners of the land) and there is no allegation in the complaint that any such judgment has been obtained; that the existence of a seed lien has been established or the value of the same." The objection was overruled. At the close of the plaintiff's case the defendants moved for a directed verdict in their favor on the same grounds and also on the ground of invalidity of the seed lien. The motion was overruled. At the close of the case when both parties had rested, defendants renewed their motion on those same grounds and on the further grounds of estoppel. The plaintiff then made a motion for a directed verdict in his favor on the ground that the undisputed evidence entitled him thereto. Thereupon the jury was excused and the matter submitted to the court by the consent of both parties. The court thereafter filed his memorandum decision and ordered judgment for the plaintiff for the full amount claimed. From that judgment this appeal is taken.

Eleven errors are assigned. The first five relate to the sufficiency of the complaint and of the evidence and the court's rulings thereon. The next five assignments relate to the validity of the seed lien. The final assignment relates to the refusal of the court to find an estoppel against the plaintiff. These are the three issues for determination.

There is not much dispute in the evidence. Clarence, Harold and Jacob Schmid owned the land in question. An oral agree-

ment for its purchase was made by Horace Narveson. In the fall of 1947 Horace took possession of the land and had some plowing done thereon. On his request the plaintiff furnished him seed in the spring of 1948 which he planted on that land and for which the plaintiff filed a seed lien. Some misunderstanding arose between the parties to the land agreement and Horace refused to go on with it. On August 7, 1948, a conference was had and a settlement made under which Horace Narveson received one-half of the grain and paid one-half of the thresh bill. During the course of the negotiations which led to the settlement plaintiff repeatedly wanted to know who was going to pay for the seed. The owners refused to pay. No mention of the seed was made in the final agreement. The plaintiff never agreed to that final settlement and did not sign the agreement. The plaintiff was never during the conference asked if he had filed a seed lien nor did he volunteer any information to that effect. The defendant, Howard G. Schmid, was the agent for the owners during all these negotiations regarding the land. When he came to sell the owner's share of the grain, which the affidavit for the release of the lien showed to be 594.35 bu. durum, 244.39 bu. barley and 77.33 bu. flax, he found this seed lien against it. Thereupon, to release that lien so that he could sell the grain the defendant, Howard, and his wife, Gudrun, executed the undertaking herein involved. Thereafter this suit was brought.

To determine the sufficiency of the complaint and of the evidence raised in defendants' first group of assignments of error a construction of this undertaking becomes necessary.

The proceedings for the release of the seed lien were taken under Chapter 35–21 NDRC 1943. No objection was raised to the procedure. Sec 35–2102 NDRC 1943 provides that the owner of the property to be released shall file with the officer having control of the record of the lien, in this case the Register of Deeds, an affidavit showing a dispute regarding liability on the lien and an undertaking. This undertaking shall have two sureties thereon and shall be "to the effect that the owner will pay

any amount that may be recovered by the lien claimant, together with all costs."

The undertaking filed in this case provides that Howard G. Schmid and Gudrun Schmid, parties of the first part, "are well and firmly bound to Hans Narveson of Oberon, North Dakota, party of the second part in the penal sum of $600.00 lawful money of the United States, well and truly to be paid." Then the condition recites the filing of the seed lien, describing the land, and concludes, "Now if the said Harold William Schmid, Clarence Lincoln Schmid and J. J. Schmid shall and will pay to the said party of the second part, his heirs, assigns, or administrators, any sum of money for which said second party may obtain judgment upon the demands for which said statement or account has been filed, then this obligation to be void, otherwise to be and remain in full force and effect."

It will be noticed that the undertaking of the sureties provided by statute is "that the owner pay any amount that may be recovered by the lien claimant." The undertaking filed by the defendants is that the owners will pay to the lien claimant "any sum of money for which said second party (the lien claimant) may obtain judgment upon the demands for which said statement or account has been filed." Defendants want their liability limited by that change of language in the undertaking.

It is conceded that no judgment against either the owners of the land or Horace Narveson to establish the lien or for the amount of the claim has been sought or obtained. This suit is brought directly against the sureties.

The defendants contend that the liability of a surety is measured by his contract and that a strict construction thereof should be made as sureties are favorites of the law. They cite Sec 22–0303 NDRC 1943; 50 CJ Principal and Surety, Sec 126, p 71; 65 CJ Undertakings, Sec 15, p 1214; Northern Light Lodge v. Kennedy, 7 ND 146, 73 NW 524; State ex rel. v. Padgett, 54 ND 211, 209 NW 388 and other cases to that effect.

There is no quarrel with the principles laid down in the authorities cited. It must be noted, however, that in the Northern Light Lodge v. Kennedy, supra, this court said, "In the con-

struction of the contract of a surety or guarantee, as well as of every other contract, the true question is, what was the intent of the parties, as disclosed by the instrument, read in the light of the surrounding circumstances. . . . It has often been said that one of the greatest aids in reaching the true meaning and intent of an uncertain contract is *to consider the condition and surroundings of the parties, and the objects they are seeking to attain."* In State ex rel. v. Padgett, supra, this court said: "It must not be overlooked that the surety is a favorite of the law and has the right to stand upon the strict terms of his obligation *when such terms have been ascertained."* In 40 CJ Mechanics Liens, Sec 439, p 331, it is said: "The liability of a surety on a bond given to prevent the discharge of a mechanic's lien depends upon whether the facts bring the case within the condition of the bond, *when that condition is fairly and reasonably construed."*

An examination of the situation at the time this undertaking was filed discloses that the plaintiff had furnished seed to his son, Horace, which had been seeded on land that he had tentatively bought but which he afterwards farmed under an agreement with the owners. Grain had been raise from that seed. The plaintiff had filed a seed lien on that grain. Under the law he could proceed in equity to foreclose that seed lien on the grain making all persons who had an interest in the grain parties to the foreclosure suit. At that point the defendants stepped in with an undertaking which they claim to be in accordance with the statute, and therefore, a statutory bond. Rosedal v. Harding, 64 ND 431, 252 NW 884. The lien was thereby released. The defendants acomplished the result desired by them and contemplated by the statute. The plaintiff had no more claim against the grain and could not bring an action to foreclose. The only security he had left was the undertaking filed by these defendants in pursuance of the statute. That statute provided as a condition that they, as sureties, pay whatever the plaintiff might recover on his claim.

The defendants, however, contend that the wording of the statute should be construed to mean, as they stated in their un-

dertaking, that the plaintiff would have to recover a judgment on his claim against the owners of the land or establish the lien, and the amount thereof in a suit against the purchaser as a condition precedent to bringing suit against them. That is not the wording nor the intent of the statute. The undertaking is the substitute for the security provided by the lien.' The purpose of the statute is to retain that security for the lien claimant. Defendants' contention if sustained might defeat that purpose. The lien claimant has a right of action against the purchaser of the seed grain but often the seed is not sold to the owner of the land but to the person who occupies it. In such cases no right of action exists against the owners personally for the amount of the claim. That is the situation in the case at bar. It also might happen that no service could be obtained upon the purchaser of the grain in which case no judgment could be obtained against him either. Thus the possibility exists whereby a lien claimant would be absolutely deprived of any remedy to recover on his seed lien if defendants' contentions were upheld. The lien law is to provide security to the one who has sold the seed additional to the right of action against the purchaser of the seed. All that the statute for the release of that lien requires under Section 35–2102 NDRC 1943 before the lien claimant can recover from the sureties is that he prove his seed lien and the amount due thereunder just as he would in an action to foreclose his lien. That he can do in the action against the sureties, on the undertaking which is a substitute for the lien.

The defendants assert that this is a statutory undertaking. It must, therefore, be construed in connection with the statute which authorized it. Whitney v. Darrow, et al., 5 Ore 443; Frankel v. Stern and Heller, 44 Cal 169. In Charles City v. Rasmussen, 210 Iowa 841, 232 NW 137, it is held, "The bond in this case is a statutory bond, and the liabilities of the parties to the bond must be measured by the statute and not by the wording of the bond. . . . We have said repeatedly that any additions to such bond will be treated as surplusage, and any omission of the provisions of the statute will be read into the bond. (Cases cited.)" See also Curtis v. Michaelson, et al., 206 Iowa

111, 219 NW 49. "The liability on statutory undertakings is measured by the terms of the statute rather than by the terms of the instrument, for the sureties engage with eyes open to such statute." 50 Am Jur Suretyship, Sec 33, p 926.

Considering the circumstances under which the undertaking was executed, the intent of the law and the results obtained, it is held that the provisions of the statute rather than the limitations attempted in the undertaking must control.

The defendants as sureties on the undertaking took upon themselves the obligation to pay the plaintiff what the owners would have had to pay on foreclosure of the lien. That obligation was direct, primary and absolute. 50 Am Jur Suretyship, Sec 2, p 904. It was an original, independent contract to that effect. Frankel v. Stern and Heller, supra. In Yerxa v. Ruthruff, 19 ND 13, 16, 120 NW 758, this court held, "There is no sound reason for permitting a surety to discharge himself by requesting the creditor to proceed against the principal. The undertaking of a surety is absolute in its terms, and not conditional, as is the engagement of an endorser. . . . He is directly and not contingently liable to the creditor." See also Bank v. Bellamy, 19 ND 509, 514, 125 NW 888. Clearly the plaintiff had a right to bring suit directly against the defendants even if he had not obtained a judgment on his claim.

The next group of assignments assails the validity of the seed lien. First ground alleged is that there was no contractual relationship between Hans Narveson and the owners of the property for the furnishing of the seed. That does not affect the validity of the lien. Sec 35–0901 NDRC 1943 provides that "Any person who furnishes seed to another to be sown or planted on lands owned or contracted to be purchased or used, occupied or rented upon filing the statement provided in Sec 35–0902 NDRC 1943 shall have a lien upon all the crop produced from seed so furnished to secure the payment of the purchase price thereof." It is not necessary, therefore, that the seed be furnished to the owner of the land.

The second contention is that the plaintiff, Hans Narveson, and his son, Horace, were at the time the seed was furnished

jointly in possession of the premises as purchasers. While the plaintiff may have been backing his son in the purchase of this land, the son, Horace, not the plaintiff, was the one who was buying it and the one occupying the land. The evidence warrants the finding that the plaintiff sold the seed to his son. Plaintiff had a perfect right to a seed lien against him for the seed plaintiff had furnished whether Horace became owner, tenant or occupant of the land. Sec 35–0901 supra.

It is next contended that the agreement of the plaintiff to furnish to his son these different kinds of seed was not one entire contract but rather a separate contract for each kind of seed and that the plaintiff was entitled only to a separate lien on the grain raised from each kind of seed. They contend that the 30 day limitation for filing a lien commenced to run from the date the last portion of each kind of seed was furnished and that some kinds had been furnished more than thirty days before the seed lien was filed.

Defendant cites as his authority for this contention, Schlosser v. Moores, 16 ND 185, 112 NW 78. This court held that the contract involved in that case was not entire because in it the number of bushels of each kind of grain and the price per bushel were fixed. That fact, the court held, made in effect a separate contract for each kind of grain sold and that the vendor was entitled only to a separate lien on the grain raised from each kind of seed. The court, however, says: "Had the contract in the case at bar merely stated the gross purchase price instead of mentioning the price of each kind of grain an entirely different case would have been presented." Whether the contract is entire or not depends upon the construction of the whole contract and the intention of the parties as derived therefrom. Pierson et al. v. Crooks et al., 115 NY 539, 22 NE 349, 12 Am St Rep 831.

In the case at bar the evidence was that plaintiff should furnish his son the seed necessary for planting this land. At the time of the agreement neither the number of bushels nor the price were known to the parties. That was determined later from the market price when the seed was delivered. That differentiates the agreement in the case at bar from the contract

in Schlosser v. Moores. In Freeman v. Clark et al., 28 ND 578, 149 NW 565, this court held that the agreement in that case, which did specify the amount and prices of each kind of grain was "indivisible so far as filing of the lien is concerned and that there need be but one lien filed" and the Court held further that: "The wheat and flax together constituted the seed to be planted on the land in question and that the last bona fide delivery of the lot constitutes the date from which the thirty days' limitation started to run." In the case at bar the last seed was furnished June 4, 1948. The lien was filed June 22, 1948. Pursuant to the rule laid down in Freeman v. Clark the lien was valid whether the contract be held entire or divisible. Neither does it matter whether the lien so filed was divisible so as to attach only to the kind of grain raised from each kind of seed. The evidence shows that there was, subject to the lien at the time it was released, a sufficient amount of each kind of grain to pay the claim for the seed from which it was raised.

There is no dispute as to the amount due and for which the plaintiff was entitled to recover under his lien.

It is finally contended by the defendant that the plaintiff is estopped from asserting this seed lien because of his failure to disclose at the time of the settlement of the land deal that he had filed such a lien. The evidence shows that the plaintiff was present during most of the negotiations leading up to the settlement. He repeatedly insisted on payment for his seed. The owners and their agent, the defendant, Howard, knew he furnished the seed but refused to make payment. A seed lien was never mentioned. It had actually been filed almost two months before. Defendants had constructive notice thereof. They had knowledge that Horace was refusing to complete the land deal and in preparation for the settlement had the opportunity to examine the records in the office of the Register of Deeds to ascertain if a seed lien had been filed. The plaintiff's repeated demands for payment of his seed should have put the defendants on inquiry but they never even asked the plaintiff if the seed lien had been filed. The plaintiff refused to participate in the agreement and left the conference before it was signed. The

agreement made no provision one way or the other in regard to pay for the seed. It settled only the division of the 1948 crops and some insurance and plowing with regard thereto. The evidence shows that there was a custom in Benson County that when lands are rented on the half crop plan, the owners of the land furnished the seed. The agreement was between Horace Narveson and Clarence, Harold W. and Jacob Schmid, and in no way involved the plaintiff.

An equitable estoppel is based on some words or conduct on the part of the person sought to be estopped on which the person seeking the estoppel acted to his prejudice. 31 CJS Estoppel, Sec 59 p 236. The plaintiff did nothing to induce the defendant, Howard, to enter into this agreement without making a disposition of the question of who would pay for the seed. He tried to prevent it by a vociferous claim for his pay. The knowledge of the lien was readily available to Howard by asking the plaintiff or the Register of Deeds. "The doctrine of equitable estoppel is essentially one of good conscience, and does not permit a litigant to assert that he was misled by another's error when the real facts were open for his convenient ascertainment." Thompson v. North Dakota Workmen's Compensation Bureau, 66 ND 756, 268 NW 710. "A public record is an available means of information as to questions of title, and one who does not take advantage of it cannot claim an estoppel against one who merely fails to furnish such information." 31 CJS Estoppel, Sec 71, p 272, 31 CJS Estoppel, Sec 99 p 321.

The trial court who had the benefit of seeing and hearing the witnesses and of noting their appearance and demeanor, made the following summary on this matter in his well-considered memorandum decision: "Plaintiff placed his lien on record and, therefore gave notice which every person was bound to know and respect. The law did not require him to go any further. He neither said nor did anything that was inconsistent with his lien. The law distinguishes between silence and encouragement. Unless there was a duty to speak, his silence was innocent and lawful. He did no act to encourage and mislead the Schmids or their agent. He was not a party to the settlement between

Horace Narveson and the Schmids. He declined to become a party. He had a right to assume that all were acquainted with the record of the lien and with his rights. There was nothing to indicate to him that any of the parties were acting in ignorance of the status of the record."

The judgment appealed from is affirmed.

GRIMSON, CHRISTIANSON, and BURKE, JJ., concur.

SATHRE, J., did not participate.