**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF BISMARCK, Plaintiff, Appellant, and Cross-Appellee,**

v.

**COMPASS INVESTMENTS, INC., R.F. Schirber, A.F. Kosir, and John C. Lindsay, Defendants, Appellees, and Cross-Appellants.**

**Civ. No. 10451.**

Supreme Court of North Dakota.

Dec. 22, 1983.

James P. Rausch, of Rausch & Rausch, Bismarck, for plaintiff, appellant, and cross-appellee.

Albert A. Wolf, of Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for defendants, appellees, and cross-appellants.

VANDE WALLE, Justice.

This is an appeal by First Federal Savings and Loan Association of Bismarck from a district court judgment dismissing its action on an agreement of a guaranty of completion of an apartment project and a subsequent agreement for substitution of guarantors. Compass Investments, Inc., R.F. Schirber, A.F. Kosir, and John C. Lindsay have lodged a cross-appeal, alleging error in the trial court's denial of expert witness fees. We affirm.

This is the second appearance of this case before this court. In *First Federal Savings and Loan Association v. Compass Investments, Inc.*, 321 N.W.2d 921 (N.D.1982), an appeal from a summary judgment of dismissal, we concluded that the complaint stated a cause of action and said, 321 N.W.2d at 923:

"From our examination of the record, we doubt the case is appropriate for a summary judgment because findings of fact are necessary to determine the full and true meaning and effect of the action of the parties in relation to the guaranty. *Roeders v. City of Washburn*, 298 N.W.2d 779 (N.D.1980); *Albers v. NoDak Racing Club, Inc.*, 256 N.W.2d 355 (N.D. 1977).

"The case is remanded for a trial on the merits and the holding of an evidentiary hearing for the purpose of receiving such appropriate and competent evidence as the parties may wish to present."

The case has now been tried on the merits and a judgment of dismissal has been entered. Many of the essential facts were stated in the prior opinion in this case and most of them will not be repeated here.

First Federal has stated the following issues on appeal:

"1. Did the District Court commit reversible error in finding as a matter of law that First Federal Savings and Loan Association of Bismarck was barred and precluded from bringing an action on the guaranty because the principal parties to the guaranty, that being Compass In-

vestments, Inc. and Crestview Park, a limited partnership, as the obligor, and the First Trust Company of North Dakota and Myron H. Atkinson, Jr., as co-trustees of the 'Casey Trust' had by stipulation agreed in a mortgage foreclosure action to dismiss the claim of the Trustees of the 'Casey Trust' against Compass, Inc. and Crestview Park, a limited partnership, which had been based on the guaranty in question, which dismissal was with prejudice? [1]

"2. Did the District Court commit reversible error in finding as a matter of law that First Federal Savings and Loan Association of Bismarck was barred and precluded from bringing an action on the guaranty because First Federal had accepted deeds and assignment of leases from the Defendants Compass, Inc., and the Trustees of the 'Casey Trust' and hence realized the full satisfaction of its debt as evidenced by the Mortgage Note and Mortgage given by the Defendant Compass, Inc.?" [2]

Compass, Schirber, Kosir, and Lindsay have stated the following additional issue in their cross-appeal:

"1. Did the District Court err in denying the taxation of expert witness fees for the preparation and testimony at trial of MAI appraiser, James D. Kramer."

At the heart of this lawsuit is a "GUARANTY" which, after reciting that the Merchants National Bank and Trust Company of Fargo and Myron H. Atkinson, Jr., as co-trustees of the Diocese of Bismarck Trust and the Mary College, Inc., Trust [the Trust], and Compass had entered into a lease of certain described real property,

and that Compass had executed a note and mortgage to First Federal, the proceeds of which were to be used to construct an apartment complex on the property, provides:

"WHEREAS, R.J. Schirber, W.F. Bianco, Al F. Kosir and Betty Lovgren are officers, directors and persons interested in Compass Investments, Inc. and have covenanted to and with the said Trust to individually and collectively guarantee the full completion of the said project,

"NOW, THEREFORE, the undersigned, as guarantors, jointly and severally guaranty to the Merchants National Bank and Trust Company of Fargo and Myron H. Atkinson, Jr. as Co-trustees and for the use and benefit of all persons, firms and corporations interested including First Federal Savings and Loan Association of Bismarck as the named mortgagee, the full completion of said apartment complex above noted pursuant to the plans and representations made; that the undersigned further covenants that the proceeds of the said loan will be disbursed according to the policy and procedure of said lending association and to be used in the construction of the said improvements; that in the event for any reason other than war, strikes, action of the government or circumstances clearly beyond the control of guarantors, the said project is not fully completed by mortgagor then and in that event the undersigned promise and agree to pay any and all costs, expenses, damages and all other expenditures which may be incurred by either the said Trust or the

---

1. Pursuant to a stipulation of the parties in a foreclosure action brought by First Federal against the co-trustees and against Compass, Crestview Park, and Prairie Builders Co., a judgment was entered that (1) dismissed First Federal's claim against the co-trustees; (2) dismissed the co-trustees' counterclaim against First Federal; (3) dismissed the co-trustees' cross-claim against Compass and Crestview Park; and (4) left unaffected all other claims and cross-claims of the parties.

2. After First Federal commenced the foreclosure action, but before judgment, the co-trustees

of the Diocese of Bismarck Trust and Mary College, Inc., Trust gave to Riverside Service Corporation, a wholly owned subsidiary of First Federal, a trustee's deed to the real property in issue. The deed specifically stated that the deed was given by the trustees "in lieu of foreclosure of their interest pursuant to" First Federal's mortgage.

In the same manner, Compass and Crestview Park gave Riverside a quitclaim deed to the property and an assignment of their lease from the Trust "in lieu of foreclosure of their interest."

mortgagee in completing the project as above set forth.

"IT IS UNDERSTOOD that this shall be a continuing guaranty and remain in full force and effect until the said project shall be so completed and certified as completed by owner and its architect at which time, after inspection has been had by mortgagee and approved by this guaranty, shall then be deemed terminated and discharged."

With regard to the issues raised by First Federal, we deem the question of whether or not First Federal has a right to enforce the guaranty at all to be dispositive of its appeal.

The trial court obviously deemed the agreement to be ambiguous. "A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates." Section 9–07–12, N.D.C.C. The parties to this action presented testimony relating to the circumstances under which the agreement was made to provide the trial court with the information "necessary to determine the full and true meaning and effect of the action of the parties in relation to the guaranty." *First Federal Savings and Loan Association v. Compass Investments, Inc., supra.*

The guaranty in issue is ambiguous. It is clear from the paragraph first quoted above that the parties who guaranteed completion of the project were Schirber, Bianco, Kosir, and Lovgren. (With the consent of the co-trustees, John C. Lindsay and Compass were later substituted for Bianco and Lovgren.) It is also clear that the Trust is the party to whom completion of the project has been guaranteed. It is clear from the recitals preceding the quoted provisions that Compass is the party for whose "debt, default, or miscarriage" the guarantors have promised to answer. Section 22–01–01, N.D.C.C.

It is not clear, however, what status or rights were intended to be conferred upon First Federal. Was First Federal intended to receive the same guarantee as the Trust, or was it intended to receive only the same "use and benefit" as all other "persons, firms and corporations interested"?

█ An action against the guarantors of notes "is not based on obligations imposed by the notes or the mortgages given to secure the notes, but on a separate and distinct contract of guaranty." *Bank of Kirkwood Plaza v. Mueller,* 294 N.W.2d 640, 643 (N.D.1980). Thus First Federal's reliance on what it considers a requirement of its loan commitment letter that Compass deposit $1,000,000 of "front end money" to "ensure the completion of the project," and its assertion that Compass never made such a deposit, is irrelevant, other than perhaps to set a ceiling on the guarantors' liability. See Section 22–01–12, N.D.C.C. Regardless of whether or not the commitment letter required such "front end money," which we think is far from clear, and regardless of how much, if any, was deposited, it is undisputed that First Federal disbursed the entire proceeds of the loan.

Although we had hoped that upon trial after our prior remand, the trial court would "find the facts specially and state separately its conclusions of law thereon," which was not done here, it is "sufficient if the findings of fact and conclusions of law appear" in an opinion or memorandum of decision. Rule 52(a), N.D.R.Civ.P. In its Memorandum Opinion the trial court stated in part:

"The property upon which this complex was to be built was not owned by the defendant, Compass Investments, Inc., but rather was one in which they had a forty year lease from the First Trust Company of North Dakota, Fargo, North Dakota, and Myron H. Atkinson, as co-trustees of the Diocese of Bismarck Trust, and Mary College, Inc., Trust, hereinafter referred to as 'The Trust'. Since the plaintiff required that the mortgage given by Compass be a first mortgage lien on the property, it was necessary to have the legal owner of the property sign a subordination agreement. Accordingly, the First Trust Company signed the same on April 30, 1979, and

**218**

Myron H. Atkinson signed the same on June 26, 1979, as the acting co-trustees.

"However, as a condition to signing the subordination agreement the Trust required the officers and directors of Compass Investment, Inc., to covenant with them individually and collectively to guarantee the full completion of the project. This was *not* a requirement of the plaintiff, First Federal Savings and Loan Association of Bismarck, in this case, nor were they a party to the agreement.

.     .     .     .     .

"... No additional consideration was given by First Federal as a result of the guarantee...."

█ Implicit in the above statements by the trial court are findings of fact that (1) First Federal required a first mortgage on the land, necessitating a subordination by the Trust of its interest in the land; (2) the Trust required a guaranty of completion of the project, which was not a requirement of First Federal; (3) First Federal was not a party to the guaranty; and (4) First Federal gave no additional consideration for the guaranty. These findings are supported by substantial evidence and are not clearly erroneous under Rule 52(a), N.D.R.Civ.P.

First Federal can enforce the guaranty as a third-party beneficiary if it falls within the ambit of Section 9–02–04, N.D.C.C., which provides: "A contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it."

Section 9–02–04, N.D.C.C., has been construed many times. In *Parlin v. Hall*, 2 N.D. 473, 52 N.W. 405, 407 (1892), this court said:

"... The mere fact that one not a party to an agreement may be benefited by its performance does not bring him into contractual relations with the promisor in the agreement. He must have been the party intended to be benefited by the promise, and there must have existed at the time thereof such an obligation on the part of the promisor towards the third person as gives him at least an equitable right to the benefits of the promise...."

This court said in Syllabus No. 4, *Farmers' State Bank v. Anton*, 51 N.D. 202, 199 N.W. 582 (1924):

"The mere fact that a third party may derive a benefit, purely incidental and not within the contemplation of the parties, from the performance of a contract, does not entitle him to maintain an action thereon in his own name within the provisions of section 5841, Comp.Laws 1913, giving the beneficiary the right to enforce a contract made expressly for his benefit."

We said in Syllabus No. 3, *State v. Padgett*, 54 N.D. 211, 209 N.W. 388 (1926):

"Wherever a statute like section 5841, C.L.1913, is in force, or where contracts for the benefit of a third person from whom no consideration flows, may be enforced by the beneficiary, the law is that 'the mere fact that a third party may derive a benefit, purely incidental and not within the contemplation of the parties, from the performance of a contract, does not entitle him to maintain an action thereon in his own name'...."

See also *O'Connell v. Entertainment Enterprises, Inc.*, 317 N.W.2d 385 (N.D. 1982); *Johnson v. Clark*, 77 N.D. 14, 39 N.W.2d 431 (1949); *Walters v. Calderon*, 102 Cal.Rptr. 89, 25 Cal.App.3d 863 (1972).

█ That the mention of one's name in an agreement does not give rise to a right to sue for enforcement of the agreement where that person is only incidentally benefited is indicated by *Johnson v. Clark*, *supra*, and *Walters v. Calderon*, *supra*.

█ It is evident from the testimony presented at trial that the purpose behind the guaranty was to induce the Trust to execute a subordination of its interest in the land upon which the apartment complex was to be built so that First Federal could have the first mortgage on the property that it required.

There is evidence from which the trier of fact could reasonably conclude that the

matter of a guaranty arose after First Federal had issued its loan-commitment letter and arose at the instance of the Trust. Further, there was testimony that it was understood by the guarantors that the guaranty was for the benefit of the Trust. First Federal's officer in charge of the loan for this project, while testifying that First Federal relied on the guaranty, also testified:

"Q. It's correct, is it not, that First Federal and you as its primary officer in charge of this project, was not relying upon the Guarantee itself in approving this loan?

"A. Not at the time. Let me put it this way. The loan commitment was not, or should I say the guarantee was not a direct requirement of the loan commitment. However, at the time, in order to get the subordination executed, it did become an indirect requirement of the loan commitment.

.    .    .    .    .

"Q. And whatever form that guarantee took was of no concern to you as long as it satisfied Mr. Atkinson in signing this Subordination Agreement for the trust, isn't that right?

"A. I guess that would be true."

The record does not indicate that First Federal was the party intended to benefit from the guaranty, nor does it indicate that the guarantors or the Trust intended to confer upon First Federal a right to enforce the guaranty. Under our prior cases construing Section 9–02–04, N.D.C.C., and its predecessors, under *Restatement of*

*Contracts* § 133(1) (1932), or under *Restatement (Second) of Contracts* § 302 (1979), First Federal is an incidental beneficiary. We conclude that as an incidental beneficiary of the guaranty in issue First Federal has no right to enforce the provisions of the guaranty.

Our determination that First Federal is an incidental beneficiary with no right to enforce the guaranty renders unnecessary determination of the issues raised by First Federal.

■  The only remaining issue for determination is that raised by Compass and the individual guarantors as to whether or not the trial court erred in denying expert witness fees. Without stating the reasons for its action, the trial court denied the taxation of expert witness fees, which is now asserted to be an abuse of discretion. Other than a reference to Section 28–26–06, N.D.C.C.,[3] Compass and the individual guarantors have provided us with no citations or supportive reasoning to buttress their assertion. Without more, we find their argument to be without merit.

For the reasons stated, the judgment is affirmed.

ERICKSTAD, C.J., and PEDERSON, GIERKE and SAND, JJ., concur.

---

**3.** Section 28–26–06, N.D.C.C., provides, in pertinent part:

"*28–26–06. Disbursements taxed in judgment.* In all actions and special proceedings, the clerk must tax as a part of the judgment in favor of the prevailing party his necessary disbursements as follows:

.    .    .    .    .

"5. The fees of expert witnesses. Such fees shall be reasonable fees as determined by the court, plus his actual expense. The following

shall nevertheless be in the sole discretion of the trial court:

"a. The number of expert witnesses who shall be allowed fees or expenses;

"b. The amount of fees to be paid such allowed expert witnesses, including an amount for time expended in preparation for trial; and

"c. The amount of costs for actual expenses to be paid such allowed expert witnesses."