**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2684
_____

IN RE: NATIONAL FOOTBALL LEAGUE
PLAYERS' CONCUSSION INJURY LITIGATION

Vashone Adams,
                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. MDL No. 2:12-md-02323)
District Judge: Honorable Anita B. Brody

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 30, 2025
Before: MATEY, BOVE, and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: October 31, 2025)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se Appellant Vashone Adams appeals from the District Court's denial of Adams' objections to the Special Master's decision denying him a monetary award and the District Court's denial of his motion for reconsideration. For the following reasons, we will affirm.

I

Adams is a former National Football League ("NFL") player who played in the 1990's. In 2016, this Court approved a settlement resolving claims that the NFL failed to protect its players from risks associated with repeated concussions. See In re Nat'l Football League Players' Concussion Inj. Litig., 821 F.3d 410 (3d Cir. 2016) ("NFL 2016"). The Settlement Agreement permitted a retired NFL player with a qualifying neurocognitive or neuromuscular diagnosis to register with a Claims Administrator and possibly receive monetary compensation. See id. at 423-25. Under the terms of the Settlement Agreement, a qualifying diagnosis for a monetary award includes "Level 2 Neurocognitive Impairment" - moderate dementia.

A diagnosis for a retired living player at Level 2 Neurocognitive Impairment is based on evaluation and evidence consistent with the diagnostic criteria and the injury definitions of the Settlement Agreement. The injury definitions include evidence of severe cognitive decline from a previous level of performance as determined by neuropsychological testing protocol. The testing protocol requires at least seven performance validity metrics be administered to a retired player. The Settlement

2

Agreement included a checklist of several considerations that could indicate whether a retired player's neuropsychological testing is invalid.

The Settlement Agreement also provided that Appeals Advisory Panel ("AAP") members and Appeals Advisory Panel Consultants ("AAPCs") - neutral neurologists and neuropsychologists - could assist the Court or Special Master with respect to medical aspects of the Settlement Agreement. See In re Nat'l Football League Players' Concussion Inj. Litig., 962 F.3d 94, 103 (3d Cir. 2020) ("NFL 2020").

A party can appeal a Claims Administrator's monetary award decision to a Special Master under the terms of the Settlement Agreement. Once the Special Master has ruled, a party may object only the Special Master's conclusions of law to the District Court. Factual determinations by the Special Master are final and binding.

Adams submitted a claim to the Claims Administrator seeking a monetary award based on a purported qualifying diagnosis of Level 2 Neurocognitive Impairment. In April 2020, Dr. Jane Booth, a neuropsychologist, completed a report on Adams. Dr. Booth considered Adams' performance to be adequate and consistent with genuine cognitive impairment. However, Dr. Booth in her report also deferred to the neurologist the degree of impairment and final diagnosis so that it could be considered in conjunction with clinical dementia rating (CDR) findings.

An AAPC reviewed Adams' claim and concluded his testing was invalid. The Claims Administrator relayed the AAPC's findings to Dr. Booth. She concluded the

3

testing of Adams at Level 2 Neurocognitive Impairment was invalid. The Claims Administrator denied Adams' claim because of invalid neuropsychological testing.

Adams appealed to the Special Master and argued his diagnosis was consistent with relevant criteria and that the denial of his claim was the result of discrimination, bias, lack of due process and misconduct. The Special Master determined that the Claims Administrator's decision was not erroneous and noted Dr. Booth's subsequent report. The Special Master also rejected Adams' allegations of bias with respect to the fairness of the review and processing of his claim.

Adams appealed the Special Master's decision to the District Court. The District Court affirmed the Special Master's decision, holding that the Special Master's finding that the neuropsychological testing was invalid was an unreviewable factual finding. The District Court also rejected Adams' claim of bias and his claim that his right to fundamental fairness within the claims process had been violated.

Adams filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) in the District Court. The District Court denied the motion for reconsideration concluding that there had been no change in controlling law or any newly available evidence that undermined its previous affirmance of the Special Master's decision. Adams then filed a notice of appeal whereby he appealed both the District Court's affirmance of the Special Master's decision as well as the District Court's denial of his motion for reconsideration.

II

We have jurisdiction under 28 U.S.C. § 1291.[1] Factual findings by the Special Master are final and binding under the terms of the Settlement Agreement. See Fed. R. Civ. P. 53(f)(3)(B). We review the District Court's interpretation of the Settlement Agreement for clear error and its administration of the settlement for abuse of discretion. See NFL 2020, 962 F.3d at 101. We review the District Court's denial of Adams' motion for reconsideration for abuse of discretion. See Gibson v. State Farm Mut. Auto. Ins. Co., 994 F.3d 182, 186 (3d Cir. 2021).

### III

The Special Master's conclusions regarding Adams' neuropsychological testing were factual. So too were the Special Master's findings supporting the rejection of Adams' claims regarding alleged bias and procedural irregularities. The parties agreed to be bound by the Special Master's fact findings. See Fed. R. Civ. P. 53(f)(3)(B). Those findings were "unreviewable . . . by the district court." AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co., 420 F.3d 751, 753 (8th Cir. 2005). Even if we were to review these determinations as legal conclusions, Adams' appellate challenges would fail under the deferential standard of review we would be obligated to apply.

---

[1] Adams' appeal is timely. The District Court entered its order affirming the Special Master's decision on November 7, 2024. Thereafter, Adams filed a timely motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e). The 30-day period for Adams to file an appeal did not begin to run until the District Court denied his motion for reconsideration on February 19, 2025. See Fed. R. App. P. 4(a)(4)(A)(iv). Adams timely filed his notice of appeal on February 26, 2025.

Finally, the District Court did not abuse its discretion in denying Adams' motion for reconsideration. Motions for reconsideration should only be granted if the movant can show: "(1) an intervening change in the controlling law; (2) the availability of new evidence . . . or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). A review of Adams' Rule 59(e) motion reveals Adams failed to meet any of those standards.

IV

For the foregoing reasons, the District Court's judgment will be affirmed.