Larry O'CONNELL, Plaintiff
and Appellant,

v.

ENTERTAINMENT ENTERPRISES,
INC., a North Dakota corporation; Erin
Hotels International, a Minnesota corpo-
ration; and First Federal Savings and
Loan Association of Grand Forks and
Minot, a North Dakota corporation, De-
fendants and Appellees.

Civ. No. 10087.

Supreme Court of North Dakota.

March 18, 1982.

Raymond J. German, East Grand Forks, Minn., for plaintiff and appellant; submitted on the briefs.

Robert A. Alphson, Grand Forks, for defendants and appellees Erin Hotels Intern. and First Federal Sav. & Loan Ass'n; submitted on the briefs.

ERICKSTAD, Chief Justice.

Larry O'Connell appeals from a summary judgment entered in the District Court of Grand Forks County. He alleges that Erin Hotels International and First Federal Savings and Loan Association of Grand Forks and Minot are liable for $14,988.01 of back salary due him for services rendered as manager of the Crown Colony Entertainment Center in Grand Forks. He bases his claim against Erin Hotels and First Federal on the legal theories of third-party beneficiary liability, promissory estoppel, and equitable estoppel. The trial court found that there was no genuine issue as to any material fact and that Erin Hotels and First Federal were entitled to a judgment as a matter of law. We affirm.

Larry O'Connell served as manager of Crown Colony Entertainment Center from January 1, 1977, until August, 1981, under an oral employment contract with Entertainment Enterprises, Inc., owner of the Crown Colony. The original contract was renegotiated in 1978 to provide an annual salary of $16,000, renegotiated in 1979 to provide an annual salary of $18,000, and renegotiated in 1980 to provide an annual salary of $20,000.

The Crown Colony fell upon financial hard times and as of May 20, 1980, O'Connell had salary due but unpaid in the amount of $14,988.01. That unpaid salary accrued as follows:

| | |
|---|---|
| 1978 | $ 4,473.32 |
| 1979 | 8,238.46 |
| 1980 | 2,276.23 |
| | $ 14,988.01 |

On April 16, 1980, First Federal assumed the management of the Crown Colony as provided for under the terms of an agreement between Entertainment Enterprises and First Federal. Under the relevant provisions of that agreement, First Federal agreed to become:

" . . . the supervising management agent, including hiring, firing and compensation of employees, management fees and debt retirement and all expenses necessary in the operation and management of said premises and business thereon."

On April 19, 1980, First Federal and Erin Hotels entered into an agreement whereby Erin Hotels assumed active management of Crown Colony for First Federal under close supervision of First Federal. First Federal, Erin Hotels, and Entertainment Enterprises then placed O'Connell on a 30-day leave of absence. It is at this point that the parties disagree. O'Connell contends that First Federal and Erin Hotels assured him that if he would return as manager at a slightly reduced salary, all of his back salary would be paid. Erin Hotels and First Federal, however, contend they only advised O'Connell that they would attempt to arrange for the payment of his back salary. They contend they never promised to become liable for O'Connell's back salary. For reasons stated in this opinion it is immaterial that they disagree on the oral evidence.

On May 23, 1980, O'Connell demanded full payment of his unpaid salary in a letter to First Federal. On May 28, 1980, First Federal and Erin Hotels terminated their agreement of April 19, 1980, and active management of the Crown Colony was returned to Entertainment Enterprises on June 30, 1980.

In an effort to collect his unpaid salary, O'Connell initiated an action against Entertainment Enterprises, First Federal, and Erin Hotels by a summons and complaint dated June 17, 1980. He moved for summary judgment against Entertainment Enterprises on February 24, 1981. That motion was granted and judgment was entered against Entertainment Enterprises on April 6, 1981, in the amount of $15,022.96, including costs and disbursements, plus interest accruing from February 24, 1981. His efforts to execute that judgment have been unsuccessful because of security agreements affecting the property of Entertainment Enterprises.

O'Connell's action continued against First Federal and Erin Hotels on the theories of third-party beneficiary liability, and promissory and equitable estoppel until summary judgment was ordered and judgment entered against O'Connell on August 5, 1981. O'Connell appeals from that judgment in favor of First Federal and Erin Hotels.

A resolution of the following two issues is dispositive of this appeal:

(1) Was O'Connell an intended third-party beneficiary of the contracts between First Federal and Entertainment Enterprises and First Federal and Erin Hotels?

(2) Were Erin Hotels and First Federal estopped from denying liability for O'Connell's unpaid salary?

The purpose of summary judgment, under Rule 56 of the North Dakota Rules of Civil Procedure, is to allow for the prompt disposition of a controversy on the merits, without a trial, when there is no real dispute as to the material facts, or when only a question of law is involved. *Pioneer State Bank v. Johnsrud*, 284 N.W.2d 292, 294 (N.D.1979). A motion for summary judgment should be granted only if, after reviewing the evidence in a light most favorable to the party against whom summary judgment is demanded, there is no genuine issue of any material fact, and the party seeking summary judgment is entitled to it as a matter of law. *Id.*

O'Connell contends that the motion for summary judgment was improperly granted because he is a third-party beneficiary to the agreement between First Federal and Entertainment Enterprises in the temporary takeover of management of the Crown Colony. The trial court held that because the contract between First Federal and Entertainment Enterprises was not made expressly for the benefit of O'Connell, he was not entitled to recovery as a third-party beneficiary.

The power of a third-party beneficiary to enforce a contract is limited by Section 9–02–04 of the North Dakota Century Code, which provides:

"A contract made *expressly* for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it." (Emphasis added.)

The requirements of this statute have remained virtually the same for 90 years. In *Parlin v. Hall*, 2 N.D. 473, 52 N.W. 405, 407 (1892), the court said:

"The mere fact that one not a party to an agreement may be benefited by its performance does not bring him into contractual relations with the promisor in the agreement. He must have been the party intended to be benefited by the promise, and there must have existed at the time thereof such an obligation on the part of the promisor towards the third person as gives him at least an equitable right to the benefits of the promise. This is the rule under the cases." 52 N.W. at 407.

In 1924, this court said in syllabus No. 4 of *Farmers State Bank of Gladstone v. Anton*, 51 N.D. 202, 199 N.W. 582 (1924):

"The mere fact that a third party may derive a benefit, purely incidental and not within the contemplation of the parties,

from the performance of a contract, does not entitle him to maintain an action thereon in his own name within the provisions of section 5841, Comp.Laws 1913, giving the beneficiary the right to enforce a contract made expressly for his benefit." 199 N.W. 582.

Section 5841 of the Compiled Laws of 1913 is identical to the current Section 9–02–04, N.D.C.C.

 O'Connell contends that the parties to the contracts in question intended that he as a creditor be expressly benefited by their contracts. Our review of the record causes us to conclude that O'Connell was merely an incidental beneficiary and therefore should not prevail in an action against First Federal or Erin Hotels under the theory of third-party beneficiary liability.

In order to determine whether or not the contracts at issue were made expressly for O'Connell's benefit, we must look to the intentions of the parties to the contract. The intentions of the parties to a contract must be ascertained from the written contract alone, if possible, but where the contract is ambiguous it may be explained by reference to the circumstances under which it was made. *Berry v. Heinz*, 139 N.W.2d 145, 148 (N.D.1965). Whether or not a contract or its terms are clear and unambiguous is a question of law. *Schulz v. Hauck*, 312 N.W.2d 360, 363 (N.D.1981). After reading the contracts, we have concluded that they are clear and unambiguous and that the parties did not contemplate expressly benefiting O'Connell. There is therefore no fact question involved regarding O'Connell's action based on third-party beneficiary theory.

The contract between First Federal and Entertainment Enterprises explains that First Federal held a mortgage on the property in which Entertainment Enterprises operated its business. After describing the mortgage, promissory note and property, the contract explains that Entertainment Enterprises was in default. The contract said, "it is the intention of the parties to work together to revitalize the business conducted on the above described premises by [Entertainment Enterprises] . . . ." The contract then provided for First Federal to be "the supervising management agent, including hiring, firing and compensation of employees, management fees and debt retirement and all expenses necessary in the operation and management of said premises and business thereon."

To properly manage the business, First Federal hired Erin Hotels to act as its managing agent. The contract between First Federal and Erin Hotels provided that Erin Hotels operate the businesses at the Crown Colony under strict supervision of First Federal. Our reading of the two contracts indicates that First Federal and Erin Hotels assumed the management of the Crown Colony only to further and protect their own interests. Entertainment Enterprises had defaulted on a number of promissory notes, mortgages and purchase agreements it had executed to finance the Crown Colony Entertainment Center. Rather than foreclose on the mortgage, First Federal and Entertainment Enterprises agreed that First Federal would assume the management of the Center with the hope that the business would be revitalized and foreclosure would thereby be avoided.

The contract does not expressly mention O'Connell or any other employee; rather, it empowers First Federal to take steps necessary to continue operating the business during the life of the agreement. The clause granting First Federal the power to pay the debts of the business, the compensation of the employees and other business expenses appears, in view of the contract's purpose, to have been included to ensure that First Federal could continue operating the business as usual. There was no expressed intent to benefit O'Connell in any way.

The second contract in question, the management agreement between Erin Hotels and First Federal, had a similar purpose, and, while it could have incidentally benefited O'Connell, it was also not expressly entered into for that purpose. As with the first contract, this contract was entered into solely to allow for the continuation of

the business. Again, this contract did not expressly mention O'Connell. Although payment of the claimed debt owed to him by Entertainment Enterprises would be an incidental benefit, such payment was not expressly provided for.

Neither First Federal nor Erin Hotels, in either of the written contracts, agreed to assume the prior obligations of Entertainment Enterprises. Although some of the prior debts may have been paid by First Federal or Erin Hotels, neither was obligated to do so under the written contracts.

The contracts, therefore, did not give rise to an obligation on the part of First Federal and Erin Hotels toward Mr. O'Connell. Summary judgment on this issue was proper.

We next turn to the issue of estoppel. There are two forms of estoppel; equitable estoppel and promissory estoppel. Equitable estoppel applies when a person makes a representation as to a present or past fact. *Farmers Cooperative Association of Churchs Ferry v. Cole*, 239 N.W.2d 808 (N.D.1976). Promissory estoppel, on the other hand, applies when a person makes a representation as to future events. *Union National Bank in Minot v. Schimke*, 210 N.W.2d 176 (N.D.1973). Both developed to prevent inequities that may result when an agreement is void or unenforceable because of inadequate consideration or the statute of frauds and one of the parties has acted to his detriment because of a representation or promise made by the other person. O'Connell does not allege that adequate consideration exists to make the alleged agreement to pay his back salary an enforceable contract. We therefore do not address that issue and turn to a discussion of the elements of estoppel.

■ The doctrine of equitable estoppel appears in the North Dakota Century Code at Section 31–11–06 which provides:

"When a party, by his own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, he shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission."

O'Connell argues that First Federal and Erin Hotels made representations to him that they would pay his back salary. We stated the requirements of equitable estoppel in *Farmers Cooperative Association of Churchs Ferry v. Cole*, 239 N.W.2d 808, 813 (N.D.1976):

" 'Based as it is upon a consideration of the facts in light of equitable considerations, public policy, fair dealing, and the like, the basic elements of an equitable estoppel, insofar as it relates to the person being estopped, are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by, or will influence, the other party or persons; and (3) knowledge, actual or constructive, of the real facts. Insofar as related to the party claiming the estoppel, the elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon, of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.' "

In considering whether or not O'Connell has met the requirements of estoppel, the evidence presented must be viewed in a light most favorable to him, as he is the party against whom summary judgment is sought. *Pioneer State Bank v. Johnsrud*, 284 N.W.2d 292, 294 (N.D.1979).

■ O'Connell argues that both First Federal and Erin Hotels made representations to him that the management agreement between Erin Hotels and First Federal included an assumption of the back salary and that all back salary would be paid. That representation alone may arguably be sufficient to fulfill the first element neces-

sary to prove equitable estoppel. O'Connell must, however, also show that he lacked knowledge and the means of obtaining knowledge as to the truth of the facts in question. The trial court concluded that O'Connell could have read both the agreement between Entertainment Enterprises and First Federal and the management agreement between First Federal and Erin Hotels, and should have concluded from such a reading that neither First Federal nor Erin Hotels intended to assume responsibility for the payment of his back salary. In light of our conclusions regarding the third-party beneficiary status of O'Connell to those contracts, we agree with the trial court's conclusion. The contracts are clear and unambiguous; O'Connell was not an intended beneficiary and by reading those contracts he had the means of obtaining that knowledge.

Additionally, O'Connell has not shown sufficient reliance on the alleged promise of payment of back salary. We do not believe that the fact that O'Connell continued to hold his position as manager of the Crown Colony proves that he would have terminated his employment if a promise of back salary had not been made. He has made no showing that he has foregone other employment opportunities because of any representations made by First Federal and Erin Hotels. For these two reasons, we conclude that O'Connell has not alleged facts sufficient to establish the existence of the elements of equitable estoppel.

The elements which O'Connell must show to recover under the doctrine of promissory estoppel are as follows: (1) a promise which the promissor should reasonably expect will cause the promisee to change his position; (2) a substantial change of the promissee's position through action, or forbearance; (3) justifiable reliance on the promise; and (4) injustice which can only be avoided by enforcing the promise. *Union National Bank in Minot v. Schimke*, 210 N.W.2d 176, 181 (N.D.1973). Assuming, for purposes of argument that O'Connell has alleged facts sufficient to meet the first element of promissory estoppel, his claim fails when analyzed against the second element. The second element of promissory estoppel requires that the promisee actually have a change in position, act to his detriment or forbear from doing an act which he has a right to perform. O'Connell has alleged that he acted to his detriment by remaining as an employee at the Crown Colony. The record is barren, however, of any showing that he suffered by remaining an employee. O'Connell has made no showing that he gave up any other employment opportunities to remain employed at the Crown Colony. An analogous example is found at 56 A.L.R.3d 1037, § 2(b), 1045–46, Anno. Statute of Frauds—Promissory Estoppel:

> "For example, it might not be sufficient for one who relied upon an oral promise of employment merely to show that he gave up other employment in reliance upon the promise, for there is nothing in such a showing to indicate that he would not have given up that employment anyway. The employee should, in such a situation, present evidence as to the job security of the former employment, how much money in dollars and cents he lost by giving up the job and its incident benefits, the amount he lost as a result of not getting the promised employment, and the cost to him of obtaining alternate employment."

O'Connell has not shown that he acted to his detriment in reliance on any promises made by First Federal and Erin Hotels. Accordingly, we affirm the decision of the trial court granting the motion for summary judgment made by Erin Hotels and First Federal. Because of our determination that O'Connell has failed to present facts which bring him within the elements of equitable or promissory estoppel, we find it unnecessary to address the issue of the conflict between the doctrine of estoppel and the statute of frauds. If estoppel does not apply, then clearly the statute of frauds applies to prevent a remand for trial to determine the facts based upon oral evidence. We also agree with Erin Hotels and First Federal that the occurrence of a mistake of law as to the effect of a judgment against one of several obligors is irrelevant

because the trial court used grounds independent of that to arrive at its decision.

One additional issue merits discussion. O'Connell's initial complaint alleged only that Erin Hotels and First Federal were liable to him on the theory of third-party beneficiary. First Federal and Erin Hotels submitted a motion for summary judgment of dismissal of such a claim. O'Connell contends that the trial court denied the motion stating that there existed a genuine issue of material fact.

O'Connell then added two additional theories of liability based on promissory and equitable estoppel. First Federal and Erin Hotels moved a second time for summary judgment, this time against all three theories of liability. This second motion for summary judgment was granted by the trial court.

 O'Connell contends that the trial court erred by granting the second motion for summary judgment when it had previously denied such a motion as it related to the third-party beneficiary claim. He bases his argument on the general rule that successive motions for summary judgment may not be granted unless the movant, in this case First Federal and Erin Hotels, introduces evidence not before the court on the earlier motion. *Allstate Finance Corporation v. Zimmerman*, 296 F.2d 797, 799 (5th Cir. 1961). Both parties have agreed that is the general rule.

First Federal and Erin Hotels contend that the general rule is inapplicable to this case because the trial court denied their initial motion for summary judgment, not because there was no material issue of fact regarding the theory of third-party beneficiary liability, but rather because the trial court determined that the doctrine of estoppel might be applicable to this action.

A review of the trial court's ruling on the first motion for summary judgment indicates that the trial court, in effect, did reserve its decision on the issue of third-party beneficiary liability until such time as evidence could be presented regarding the applicability of the doctrines of estoppel and the statute of frauds. The trial court stated:

"Therefore, it would appear to the Court that motion for summary judgment for the plaintiff and against the defendant would not be available to it since one of the elements of his entitlement that would be facts upon which an estoppel would be based would have to be established by testimony."

The trial court was free, therefore, to rule on the second motion for summary judgment on all three theories of liability presented by O'Connell.

We affirm.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.