Don RUSSELL, Plaintiff and Appellant,

and

Dennis Palmer, Plaintiff,

v.

BANK OF KIRKWOOD PLAZA,
Defendant and Appellee.

Civ. No. 11046.

Supreme Court of North Dakota.

April 23, 1986.

Paul A. Sortland, Fargo, for plaintiff and appellant Don Russell; appearance by Gary D. Kanwischer.

Lamb, Schaefer, McNair & Larson, Fargo, for defendant and appellee; argued by Michael D. McNair.

MESCHKE, Justice.

Don Russell appeals from a summary judgment dismissing his action against the Bank of Kirkwood Plaza (Kirkwood Bank) for the breach of a loan commitment. We affirm.

In 1982 Don Russell, Dennis Palmer, James Glatt, and Ruben Scherle were the members of a partnership named the K.R.G.S. Egg Company (KRGS). Glatt and Scherle were also the members of a partnership known as East Plaza Development (East Plaza). Neither Russell nor Palmer was associated with the East Plaza part-

nership. Following negotiations, the Kirkwood Bank issued a contingent loan commitment for $1,700,000 to Glatt, Scherle, and East Plaza for the purpose of financing a development project known as Metro Business Park in Bismarck. The loan commitment letter, dated July 16, 1982, and addressed to Glatt, Scherle, and East Plaza, set forth 23 conditions that East Plaza had to meet before the loan would be made. One of those conditions was that:

"8. This commitment is subject to principals obtaining suitable financing for the KRGS Egg, Inc., project."[1]

On July 22, 1982, the former State Bank of Burleigh County (United Bank) issued a loan commitment for $450,000 to the KRGS partnership. One of the conditions of the United Bank's loan commitment was that the Kirkwood Bank's loan to Glatt, Scherle, and East Plaza be completed.

The Kirkwood Bank failed to honor its loan commitment to Glatt, Scherle, and East Plaza and, as a result, the United Bank did not make its loan to the KRGS partnership.

On September 20, 1982, Glatt, Scherle, and East Plaza brought suit against the Kirkwood Bank for repudiation of the contingent loan agreement. A jury ultimately returned a verdict against the bank and awarded Glatt, Scherle, and East Plaza more than $3,500,000. We recently affirmed the bank's liability in the matter, but reversed for a new trial on the issue of damages. *See Glatt v. Bank of Kirkwood Plaza*, 383 N.W.2d 473 (N.D.1986).

On September 21, 1983, Russell[2] brought this action against the Kirkwood Bank claiming that it knew the KRGS financing

---

1. There is no dispute in this case that the reference in the commitment letter to "KRGS Egg, Inc." is a reference to the "K.R.G.S. Egg Company," and that KRGS functioned as a partnership rather than as a corporation.

2. Although Palmer was also originally a plaintiff in this action, on January 17, 1985, he stipulated to the dismissal of his claim against the Kirkwood Bank.

It may be questionable whether Russell, as an individual partner, can sue in his own name to enforce the alleged liability owed to the KRGS partnership. *See, e.g., Kemp v. Murray*, 680 P.2d 758, 759 (Utah 1984); *Karp v. Coolview of Wisconsin, Inc.*, 25 Wis.2d 299, 130 N.W.2d 790, 793 (1964); Crane and Bromberg, Law of Partnership § 57 (1968); 60 Am.Jur.2d *Partnership* § 327 (1972). *Compare* Chapter 45-06, N.D.C.C.

from the United Bank was dependent upon completion of its loan to Glatt, Scherle, and East Plaza, and that KRGS was contemplated by all parties to be a beneficiary of the Kirkwood loan commitment. Russell sought $142,500 in actual damages and $500,000 in punitive damages for the Kirkwood Bank's breach of its loan commitment. The district court granted the Kirkwood Bank's motion for summary judgment on the ground that Russell's allegations did not constitute a cause of action against the bank. This appeal followed.

Russell attempts to predicate liability on the Kirkwood Bank on several theories. Russell first asserts that, as a partner in KRGS, he was in "direct privity"[3] with the Kirkwood Bank and is thus in a position to recover for breach of the bank's loan commitment to Glatt, Scherle, and East Plaza.

Russell's argument that he was in "direct privity" with the Kirkwood Bank in regard to the loan commitment can be stated as follows: 1) Glatt and Scherle, in addition to their being partners in East Plaza, were also in partnership with him in KRGS; 2) the loan commitment required Glatt and Scherle to obtain financing for KRGS; 3) under general principles of agency law and the provisions of the Uniform Partnership Act, Chapter 45–05 *et seq.*, N.D.C.C., each partner can by his own acts bind the partnership and the other individual partners; 4) by entering into the loan

commitment, Glatt and Scherle agreed on behalf of KRGS, and therefore Russell, to obtain suitable financing for that partnership; 5) the Kirkwood Bank, through the loan commitment, thus obligated Russell and all partners to obtain financing for KRGS; 6) therefore, Russell and all partners in KRGS were in "direct privity" with the Kirkwood Bank. We find this tortuous reasoning unpersuasive.

■ The mere fact that a partnership may ultimately benefit from a contract made by a partner in his own name and on his own behalf does not create a partnership obligation. *See Brewer v. Elks*, 260 N.C. 470, 133 S.E.2d 159, 162 (1963); *Ogallala Fertilizer Company v. Salsbery*, 186 Neb. 537, 184 N.W.2d 729, 731 (1971); 68 C.J.S. *Partnership* § 179 (1950). The Kirkwood Bank's loan commitment letter clearly establishes that Glatt and Scherle were not acting on behalf of KRGS in regard to the $1,700,000 loan. The letter was issued solely to Glatt, Scherle, and East Plaza and states that the purpose of the loan was for "purchasing condominium units and construction funds to complete racquetball, health club, restaurant and bar facilities in the Metro Business Park complex ..." None of the loan proceeds were to be used for KRGS. The statement in condition # 8 that "principals" obtain suitable financing for KRGS is in obvious reference to Glatt and Scherle, as principals of East Plaza,

---

The bank has not raised the issue so we do not address it.

**3.** The term "privity" has been used by courts in several different senses. In one sense it refers to those parties who, as a matter of factual circumstances, exchange the contractual promissory words. *See Wing v. Martin*, 107 Idaho 267, 688 P.2d 1172, 1177 (1984); 4 Corbin on Contracts § 778 (1951); Calamari and Perillo, Contracts § 17–1 (2d ed. 1977). In another sense, it refers to the legal right created with respect to either a party to or a beneficiary of a contract to enforce the contractual provisions. *See* 4 Corbin on Contracts, *supra; Peterson v. Parviainen*, 174 Minn. 297, 219 N.W. 180, 183 (1928) (Stone, J., concurring). When used in the latter context, the term "privity" necessarily embraces the third-party beneficiary concept.

*See generally Finstad v. Steiger Tractor, Inc.*, 301 N.W.2d 392, 394 n. 1 (N.D.1981).

Russell maintains that he does not place major reliance upon third-party beneficiary principles as a theory of liability, even though the only case cited in support of the proposition that he was in "direct privity" with the Kirkwood Bank was decided under the predecessor statute to the current third-party beneficiary statute, § 9–02–04, N.D.C.C. *See McDonald v. Finseth*, 32 N.D. 400, 155 N.W. 863 (1915). We understand Russell's use of the term "privity" in this portion of his argument to mean he is asserting that he was a party who, as a matter of factual circumstances, exchanged the contractual promissory words, and address his alternative third-party beneficiary argument later in this opinion.

rather than to the KRGS partnership or to its members in their capacity as KRGS partners. Nothing in the letter indicates that Glatt and Scherle were representing KRGS with regard to the $1,700,000 loan, and as a result, the loan commitment did not create a contractual obligation on the part of KRGS. We conclude that Russell was not in "direct privity" with the Kirkwood Bank in regard to the $1,700,000 loan commitment.

Russell asserts in the alternative that he, as a partner in KRGS, was an intended third-party beneficiary of the loan commitment between the Kirkwood Bank and Glatt, Scherle, and East Plaza. The third-party beneficiary theory of liability is codified in § 9–02–04, N.D.C.C., which provides that "[a] contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it."

In *Parlin v. Hall*, 2 N.D. 473, 52 N.W. 405, 407 (1892), this court stated:

> "The mere fact that one not a party to an agreement may be benefited by its performance does not bring him into contractual relations with the promisor in the agreement. He must have been the party intended to be benefited by the promise, and there must have existed at the time thereof such an obligation on the part of the promisor towards the third person as gives him at least an equitable right to the benefits of the promise."

This court has also held that the mention of one's name in an agreement, in itself, does not give rise to a right to sue for the enforcement of the agreement where that person is only incidentally benefited. *See First Fed. S & L v. Compass Investments*, 342 N.W.2d 214, 218 (N.D.1983); *Johnson v. Clark*, 77 N.D. 14, 39 N.W.2d 431 (1949).

In order to determine whether the loan commitment was made expressly for the benefit of Russell and KRGS, we look to the intentions of the parties to the contract. If the contract is clear and unambiguous and the parties' intentions can be ascertained from the writing alone, the question is one of law for the court to decide. *O'Connell v. Entertainment Enterprises*, 317 N.W.2d 385, 388 (N.D.1982).

We discern no express or implied intention under the unambiguous terms of the loan commitment letter to benefit KRGS or Russell. Although one of the 23 conditions in the commitment letter required Glatt and Scherle to obtain suitable financing for KRGS, that condition must be viewed in light of the entire agreement. None of the proceeds from the Kirkwood Bank's loan were to accrue to the benefit of KRGS. The commitment letter states that the purpose of the loan was for the completion of the Metro Business Park complex, in which the KRGS partnership and Russell had no interest.

Russell relies upon *Lucas v. Hamm*, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (1961), *cert. denied*, 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962), and *CF Industries v. Transcontinental Gas Pipe Line*, 448 F.Supp. 475 (W.D.N.C.1978), for the proposition that a beneficiary may enforce a promise to do an act even though the promised act is to be rendered directly to the promisee. In *Hamm* the court held that intended beneficiaries of a will who lose their testamentary rights because of failure of the attorney who drew the will to properly fulfill his obligations under his contract with the testator may recover as third-party beneficiaries. The court reasoned that "a contract for the drafting of a will unmistakably shows the intent of the testator to benefit the persons to be named in the will, and the attorney must necessarily understand this." *Hamm, supra*, 15 Cal.Rptr. at 825, 364 P.2d at 689. In *CF Industries*, the court held that a plant operator had a cause of action as a third-party beneficiary for breach of a supply contract between an interstate natural gas pipeline company and an intrastate distribution company. The court noted that there was no evidence that the delivery by

the interstate supplier to the intrastate distributor "had any other purpose except" to enable the intrastate distributor to fulfill its contract to supply the plant operator. *CF Industries, supra,* 448 F.Supp. at 481. Neither *Hamm* nor *CF Industries* alters the requirement that there must exist an intent to expressly benefit the third party through the performance of the promised act before the third party may sue on the contract. There is no such intent, either express or implied, under the circumstances of the instant case.

We conclude that, as a matter of law, KRGS and Russell were not intended third-party beneficiaries of the loan commitment between the Kirkwood Bank and Glatt, Scherle, and East Plaza.

■ Russell also asserts that "principles of estoppel" should apply to bar the Kirkwood Bank from denying that he is in a position to sue for breach of the loan commitment. He initially relies on *Farmers' State Bank of Gladstone v. Anton,* 51 N.D. 202, 199 N.W. 582 (1924), for the proposition that "estoppel applies to representat[ions] made either to a direct party to a contract or to persons, 'occupying a relation to the subject matter of the representations similar to that of whom they were made.'" Russell asserts that he occupied "a relation similar, if not identical," to that of Glatt and Scherle with regard to the loan commitment, and thus he is in a position to enforce it.

Assuming for purposes of argument that Russell has correctly interpreted the formulation in *Anton,* we fail to see how it supports his position in this case. The subject matter of the loan commitment between the Kirkwood Bank and Glatt, Scherle, and East Plaza was the $1,700,000 loan to be used for the purpose of developing the Metro Business Park complex. It is undisputed that Russell and the KRGS partnership had no interest in the East Plaza partnership or in the Metro Business Park project. Russell's relationship to the

Kirkwood Bank loan commitment is not sufficiently "similar" to that of Glatt and Scherle to put him in the same position as they are.

■ Russell also asserts that he should be entitled to recovery under the doctrine of promissory estoppel. The elements which must be established before the doctrine can be invoked are: 1) a promise which the promisor should reasonably expect will cause the promisee to change his position; 2) a substantial change of the promisee's position through action, or forbearance; 3) justifiable reliance on the promise; and 4) injustice which can only be avoided by enforcing the promise. *O'Connell v. Entertainment Enterprises,* 317 N.W.2d 385, 390 (N.D.1982). Assuming for purposes of argument that Russell has alleged facts sufficient to meet the first element, he has not alleged facts sufficient to satisfy either the second or the third elements.

■ It is evident that neither Russell nor KRGS substantially changed their position as a result of the loan commitment requirement that Glatt and Scherle obtain suitable financing for KRGS. The record reflects that it was necessary, regardless of the loan commitment requirement, for KRGS to obtain a loan to convert short-term financing for a debt on a chicken barn to long-term financing. As the district court stated in its memorandum opinion:

> "It is ... clear that KRGS did not apply to United Bank for a loan because Kirkwood Bank made its commitment contingent upon KRGS doing so. It applied to the bank for a loan because it was to its interests to do so. *It was not obligated to do so* and, obviously, in applying for its own loan, was not relying on the commitment made by Kirkwood Bank." [Emphasis in original.]

We likewise conclude that Russell has failed to establish any justifiable reliance upon condition # 8 of the loan commitment. Russell asserts that the Kirkwood Bank

made a promise to the KRGS partnership, through Glatt and Scherle, that if the partnership obtained suitable financing the bank would honor the loan commitment. Even if that were true, financing for KRGS was only one of 23 conditions which had to be met by Glatt and Scherle before the loan proceeds were to be disbursed to them and East Plaza. The other 22 conditions were outside of the control of KRGS and Russell and bore no relationship to them. If Russell and the KRGS partnership in fact relied upon compliance with condition # 8 as the sole predicate to successful completion of the loan, it was not a justifiable reliance. The doctrine of promissory estoppel is therefore inapplicable under the circumstances.

Russell also asserts that the Kirkwood Bank should be liable for his injuries suffered as a result of the breach because it "could foresee the injury that it would cause ... if it did not carry through with its loan commitment." In support of his argument, Russell relies on Restatement (Second) of Contracts § 90 (1981). That section sets forth the doctrine of promissory estoppel, which we have determined is inapplicable in this case. Furthermore, neither of the cases cited by Russell, *Shinrone, Inc. v. Tasco, Inc.*, 283 N.W.2d 280 (Iowa 1979), and *Twin City Const. Co. v. ITT Indus. Credit Co.*, 358 N.W.2d 716 (Minn.App.1984), suggests that foreseeability of injury, absent the establishment of a legally enforceable obligation between the parties, constitutes an independent basis upon which to predicate liability in a contract action.

Summary judgment is appropriate when there is no dispute as to material facts, or when, although factual disputes exist between the parties, the law is such that resolution of the factual disputes will not change the result. *Gowin v. Hazen Memorial Hosp. Ass'n*, 349 N.W.2d 4, 8 (N.D.

1984). Resolution of factual disputes would not change the result in this case.

The summary judgment is affirmed.[4]

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.

---

4. We note, as did the district court, that Russell has not attempted to premise liability on a claim of tortious interference with contractual relations. *See generally Bismarck Realty Co. v. Folden*, 354 N.W.2d 636, 642 (N.D.1984), and cases cited therein.