# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 04-3653

_____

| | | |
|---|---|---|
| Earle Myers, Jr., also known as "Bud," | * * * | |
| Appellant, | * * | |
| v. | * * | Appeal from the United States District Court, District of North Dakota. |
| Richland County; Bryan L. Flaa; Don Holen; Lynn C. Larsen; Tim Campbell; Joel Dotzenrod, Richland County Commissioners, in their official capacities; Ray Ward; Steve Campbell; Merlin Berg; Dave Paulson, former Richland County Commissioners, in their individual and official capacities, | * * * * * * * * * * | |
| Appellees. | * | |

_____

Submitted:  September 14, 2005
Filed:  November 16, 2005

_____

Before MURPHY, HANSEN, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Earle Myers, Jr. ("Myers") brought this action for breach of contract, intentional infliction of emotional distress ("IIED") and defamation arising from an alleged violation of a settlement agreement. The district court granted the defendants' motion for summary judgment as to all three claims. For the reasons discussed below, we affirm the district court's grant of summary judgment on the breach of contract claim, vacate the grant of summary judgment on the IIED and defamation claims and remand with instructions to dismiss the IIED and defamation claims for lack of jurisdiction.

## I. BACKGROUND

Myers served as the elected State's Attorney for Richland County, North Dakota, from 1977 until 2003. In May 2000, a former Richland County employee, Jewel Jones-Van Tassel ("Jones-Van Tassel"), filed an amended complaint against Richland County and others in the District of North Dakota alleging claims including gender discrimination in violation of Title VII of the Civil Rights Act.[1] In that litigation, Myers gave deposition testimony that was favorable to Jones-Van Tassel concerning his knowledge of the behavior of Richland County Sheriff Harlan Muehler and Richland County Commissioner Dave Paulson toward female employees of Richland County. The parties settled the case, and Jones-Van Tassel received $1.2 million. The defendant-signatories of the Jones-Van Tassel settlement agreement who are also defendants in the present action include Richland County and former Richland County Commissioners Ray Ward, Dave Paulson, Merlin Berg and Steve Campbell. Paragraph six of the settlement agreement, the "no-retaliation provision," provides:

> **6. No Retaliation**. Defendants agree that they will not retaliate with respect to any employment related matter against any former, present, or

---

[1]*Jones-Van Tassel v. Richland County, et al.*, No. 99-CV-60 (D.N.D.).

-2-

prospective City or County employee, or individual whose compensation is paid, in whole or in part, by the City or County, who have provided any support to Plaintiff, whether by affidavit, deposition testimony, providing information to Plaintiff, or any other manner of support.

Furthermore, paragraph 17 of the settlement agreement provides, "The parties agree that the Federal District Court for the District of North Dakota shall retain jurisdiction of this matter to enforce the terms of this Settlement Agreement and Release." The district court expressly retained jurisdiction to enforce the settlement agreement in its January 10, 2001, Order for Dismissal with Prejudice and Retaining Jurisdiction with the statement that "this Court shall retain jurisdiction of this matter to enforce the terms of the Settlement Agreement and Mutual Releases."

On November 12, 2002, Myers instituted the present action against Richland County and current and former members of the Richland County Board of Commissioners in their individual and official capacities. Myers brought three claims. The first was a breach of contract claim against Richland County.[2] He asserted that Richland County breached the Jones-Van Tassel settlement agreement by retaliating against him for his deposition testimony and that the retaliation resulted in his defeat in the November 2002 election for State's Attorney. He also brought claims for IIED and defamation against present Richland County Commissioners Bryan L. Flaa, Don Holen, Lynn C. Larsen, Tim Campbell and Joel Dotzenrod, in their individual capacities, and former Richland County Commissioners Ray Ward, Steve Campbell, Merlin Berg and Dave Paulson, in their individual capacities.

[2]On appeal, Myers attempts to argue that the breach of contract claim was brought against the individual commissioners as well as Richland County. Yet paragraph 34 of his Complaint states that the breach of contract count "is brought against the County," and Myers's Brief in Opposition to Defendant's Motion for Summary Judgment states, "Myers alleged three counts in his Complaint. The first count, breach of contract, is only asserted against the County."

-3-

The defendants moved to dismiss the action. The district court denied the defendants' motion to dismiss on October 23, 2003, rejecting the arguments that it lacked subject matter jurisdiction, that Myers lacked standing to enforce the settlement agreement and that Myers failed to state a claim upon which relief could be granted. The district court later amended its order so as to dismiss the defendants who were not signatories to the Jones-Van Tassel settlement agreement–Bryan L. Flaa, Don Holen, Lynn C. Larsen, Tim Campbell and Joel Dotzenrod. Next, the parties stipulated that Steve Campbell and Merlin Berg be dismissed from the suit. The remaining defendants, Richland County, Ray Ward and Dave Paulson, moved for summary judgment. On September 30, 2004, the district court granted the motion for summary judgment as to Myers's remaining claims for breach of settlement agreement against Richland County, and for IIED and defamation against Ray Ward and Dave Paulson. Myers appeals.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

We first must address the defendants' argument that this action should be dismissed for lack of subject matter jurisdiction because "[a]ny party or the court may, at any time, raise the issue of subject matter jurisdiction." *GMAC Commercial Credit LLC v. Dillard Dept. Stores, Inc.*, 357 F.3d 827, 828 (8th Cir. 2004). We review the question of subject matter jurisdiction de novo. *Gilbert v. Monsanto Co.*, 216 F.3d 695, 699 (8th Cir. 2000).

The district court found that the breach of contract claim, as well as the IIED and defamation claims, fell within supplemental jurisdiction under 28 U.S.C. § 1367(a), and rejected the defendants' request that the district court exercise its discretion to decline jurisdiction based on the factors listed in 28 U.S.C. § 1367(c). We hold that because the district court expressly retained jurisdiction to enforce the

Jones-Van Tassel settlement agreement, it had ancillary enforcement jurisdiction over the breach of contract claim. We also hold, however, that the district court lacked supplemental jurisdiction pursuant to § 1367(a) over the IIED and defamation claims because it did not possess original jurisdiction over the action, as required by § 1367(a).

### 1. Breach of Contract

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Insurance Co. of Am.*, 511 U.S. 375, 377 (1994). The Supreme Court held in *Kokkonen* that district courts do not have inherent power to enforce a settlement agreement entered into by parties in federal court. 511 U.S. at 380-81. Because an action to enforce a settlement agreement is a claim for breach of contract, it should be heard in state court unless it has "its own basis for jurisdiction." *Id.* at 378. While the Court found no basis for jurisdiction where the district court's order did not even mention the settlement agreement, the Court explained that

> if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal–either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. . . . a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

511 U.S. at 381; s*ee also Adduono v. World Hockey Ass'n*, 824 F.2d 617, 621-22 (8th Cir. 1987) (holding that the district court lacked jurisdiction where it did not incorporate the settlement agreement into the dismissal order or expressly retain jurisdiction to enforce the settlement agreement).

*Kokkonen* distinguished two "heads" of "ancillary jurisdiction (in the very broad sense in which that term is sometimes used)," explaining that the Court has asserted it "for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." 511 U.S. at 379-80 (citations omitted). The exercise of jurisdiction to enforce a settlement agreement serves the latter role. *Id.* at 380-81. This "ancillary enforcement jurisdiction" is distinct from the type of ancillary jurisdiction exercised pursuant to 28 U.S.C. § 1367.[3] Section 1367 "combines the doctrines of pendent and ancillary jurisdiction under a common heading" of supplemental jurisdiction. *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 165 (1997). It provides in part that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims within the action are part of the same case or controversy if they "derive from a common nucleus of operative fact." *City of Chicago*, 522 U.S. at 165 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

---

[3] Therefore, although we agree with the district court's exercise of jurisdiction over the breach of contract claim, we disagree with its rationale. In the October 23, 2003, order denying the defendants' motion to dismiss, the district court discussed *Kokkonen* and the express retention of jurisdiction to enforce the settlement agreement. However, the district court improperly equated this ancillary enforcement jurisdiction with supplemental jurisdiction under 28 U.S.C. § 1367(a), stating that § 1367(a) "allows state claims such as the plaintiff's breach of contract claim to ride the back of a federal claim as long as that claim has an independent basis for jurisdiction." Because ancillary enforcement jurisdiction is distinct from § 1367, we do not analyze whether the breach of contract claim meets the statutory test for supplemental jurisdiction under § 1367.

The existence of ancillary enforcement jurisdiction apart from the supplemental jurisdiction embodied by § 1367 is evidenced by *Kokkonen*'s caveat that its use of the term "ancillary jurisdiction" was in a "very broad sense" and by its lack of reliance on § 1367.[4] 511 U.S. at 379-80. Furthermore, the distinction is supported by the Supreme Court's comment in *Peacock v. Thomas* that "Congress codified *much* of the common-law doctrine of ancillary jurisdiction as part of 'supplemental jurisdiction' in 28 U.S.C. § 1367," 516 U.S. 349, 354 n.5 (1996) (emphasis added), as well as by statements from several of our sister circuits recognizing that ancillary enforcement jurisdiction is a viable doctrine that was not codified in § 1367.[5]

---

[4]The only mention of § 1367 in *Kokkonen* is a "*cf.* 28 U.S.C. § 1367" citation following the description of the two heads of ancillary jurisdiction and accompanying citations. *Kokkonen*, 511 U.S. at 380. The use of a "compare" signal indicates that § 1367 is not a complete embodiment of the "very broad" ancillary jurisdiction that the Supreme Court was discussing.

[5] *See Fafel v. Dipaola*, 399 F.3d 403, 412 n.10 (1st Cir. 2005) ("The first type of ancillary jurisdiction has been described as 'supplemental' jurisdiction, and is generally codified at 28 U.S.C. § 1367. The second type of ancillary jurisdiction has been characterized as 'enforcement jurisdiction' and recognizes the 'inherent power of federal courts to exercise jurisdiction in order to enforce their judgments in certain situations where jurisdiction would otherwise be lacking.'") (citations omitted); *Hudson v. Coleman*, 347 F.3d 138, 142 (6th Cir. 2003) ("The first category of ancillary jurisdiction identified [in *Kokkonen*] has largely been codified in the supplemental jurisdiction statute, 28 U.S.C. § 1367. The second category of ancillary jurisdiction is generally referred to as 'ancillary enforcement jurisdiction.'"); *Epperson v. Entertainment Express, Inc.*, 242 F.3d 100, 108 (2d Cir. 2001) ("[A]s the *Peacock* Court noted, when Congress codified much of the common law of ancillary jurisdiction as part of 'supplemental jurisdiction' in 28 U.S.C. § 1367, it included the branch of ancillary jurisdiction premised on factual interdependence, but did not codify enforcement jurisdiction."); *United States v. Alpine Land & Reservoir Co.*, 174 F.3d 1007, 1012 n.5 (9th Cir. 1999) ("Supplemental jurisdiction under § 1367 is distinct from the equitable doctrine of ancillary jurisdiction, which allows a court to adjudicate related claims 'to manage its proceedings, vindicate its authority, and effectuate its decrees.'") (quoting *Kokkonen*, 511 U.S. at 380). This Court has noted

We are not persuaded by the defendants' contention that jurisdiction fails because Myers filed a separate action for damages instead of a motion to enforce the settlement agreement in the prior action. As the *Kokkonen* Court noted, "[e]nforcement of the settlement agreement, . . . whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit." 511 U.S. at 378. We agree with the Seventh Circuit that "where a party to a settlement agreement approved by a federal court brings a *new suit* in federal court alleging a breach of the agreement, federal jurisdiction exists over the suit, provided the federal court incorporated the agreement into its final order or reserved jurisdiction to enforce the agreement." *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 411 (7th Cir. 2000) (emphasis added); *cf. Miener v. Missouri Dept. of Mental Health*, 62 F.3d 1126, 1127 (8th Cir. 1995) (holding that the district court lacked jurisdiction over an "action . . . to enforce a settlement agreement reached in an *earlier federal lawsuit*" where there was no provision retaining jurisdiction or incorporating the settlement agreement into the order) (emphasis added). Because Myers's breach of contract claim satisfies the requirements for ancillary enforcement jurisdiction, the district court had subject matter jurisdiction over it.

## 2. IIED and Defamation

Although the district court had ancillary enforcement jurisdiction over the breach of contract claim, it did not have subject matter jurisdiction over the IIED and defamation claims. The only possible source of jurisdiction over these two state tort claims is the supplemental jurisdiction authorized by 28 U.S.C. § 1367, and supplemental jurisdiction over Myers's IIED and defamation claims is not proper.

---

that "[i]n 1990, Congress consolidated and codified the common law doctrines of ancillary and pendant jurisdiction under the title 'Supplemental jurisdiction,' in 28 U.S.C. § 1367," *Motion Control Corp. v. SICK, Inc.*, 354 F.3d 702, 705 (8th Cir. 2003), but has not explicitly addressed whether supplemental jurisdiction under § 1367 includes *all* forms of ancillary jurisdiction.

First, the claims are not supplemental to the Jones-Van Tassel discrimination claim. While the district court did exercise original jurisdiction over the Jones-Van Tassel discrimination claim pursuant to 28 U.S.C. § 1331, supplemental jurisdiction over Myers's tort claims fails because the IIED and defamation claims neither are part of the same civil action as the Jones-Van Tassel discrimination claim nor stem from the same nucleus of operative fact as does the Jones-Van Tassel discrimination claim. *See Peacock*, 516 U.S. at 355-56.

Second, the IIED and defamation claims are not supplemental to the breach of contract claim. Although there may be sufficient factual interdependence between Myers's tort claims and his breach of contract claim, the district court did not possess original jurisdiction over the breach of contract claim. Supplemental jurisdiction only applies to a "civil action of which the district courts have original jurisdiction." 28 U.S.C. § 1367(a). Therefore, before a district court asks whether it can exercise supplemental jurisdiction over some claims in an action, it must first determine that it has original jurisdiction over the civil action within the meaning of § 1367(a); in other words, it must have original jurisdiction over at least one claim in the complaint. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 125 S.Ct. 2611, 2620-21 (2005).

Original jurisdiction is equivalent to independent federal subject matter jurisdiction.[6] Ancillary enforcement jurisdiction, like supplemental jurisdiction under

---

[6]As noted by the First Circuit, the phrase "civil action of which the district courts have original jurisdiction" in 28 U.S.C. § 1367 "unambiguously invokes the language that Congress has used for more than two hundred years to confer jurisdiction on the federal district courts in civil cases. Nearly every jurisdictional grant in Title 28 provides that 'the district courts shall have original jurisdiction' of 'civil action[s]' within the scope of the grant. *See, e.g.*, 28 U.S.C. §§ 1331 (federal questions), 1332 (diversity), 1335 (interpleader), 1337 (antitrust), 1338 (intellectual property), 1339 (postal matters), 1340 (internal revenue)." *Rosario Ortega v. Star-Kist Foods, Inc.*, 370 F.3d 124, 135 (1st Cir. 2004), *rev'd on other grounds sub*

§ 1367, is not original jurisdiction. Both the Supreme Court and the Eighth Circuit have held that ancillary jurisdiction does not provide the original jurisdiction needed for removal to federal court under 28 U.S.C. § 1441, which like § 1367 applies to a "civil action . . . of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). *See Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 34 (2002) (stating that ancillary enforcement jurisdiction "cannot provide the original jurisdiction" required by the removal statute); *Motion Control Corp.*, 354 F.3d at 706 (following *Syngenta* and stating that ancillary jurisdiction based on factual interdependence "does not authorize removal under § 1441" and "is not original jurisdiction"). In addition, the *Kokkonen* Court indicated that ancillary enforcement jurisdiction over a settlement agreement is not original jurisdiction. After discussing the district court's two options for preserving jurisdiction–either embodying the settlement agreement in the dismissal order or expressly retaining jurisdiction over the settlement agreement–*Kokkonen* stated, "Absent such action, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." 511 U.S. at 382. Here, because the district court did not possess original jurisdiction over the breach of contract claim, it could not exercise supplemental jurisdiction over the IIED and defamation claims.

Because the IIED and defamation claims are not part of the same civil action as is the Jones-Van Tassel discrimination claim and the district court's ancillary enforcement jurisdiction over the breach of settlement agreement claim is not original jurisdiction, the district court lacked supplemental jurisdiction pursuant to § 1367 over the IIED and defamation claims.

### B. Standing

We next address the defendants' argument that summary judgment should be

*nom. Exxon Mobil Corp. v. Allapattah Services, Inc.*, 125 S.Ct. 2611 (2005).

affirmed because Myers lacks standing to enforce the settlement agreement. We agree with the district court that Myers has standing to sue as an intended third-party beneficiary of the settlement agreement.

A federal court cannot hear Myers's breach of contract claim unless he has standing to sue under North Dakota state law. *See Metropolitan Express Servs., Inc. v. City of Kansas City*, 23 F.3d 1367, 1369 (8th Cir. 1994) (applying state law of standing in federal diversity case); *Westborough Mall, Inc. v. City of Cape Girardeau*, 693 F.2d 733, 747-48 (8th Cir. 1982) (analyzing standing to raise a state claim in federal court under state law). We review the district court's interpretation of state law de novo. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991). Settlement agreements are generally construed according to the principles of contract law. *See Vandal v. Peavey Co.*, 523 N.W.2d 266, 268 (N.D. 1994) ("When a settlement is fairly made before trial, it 'takes on the character of a contract . . . and is final and conclusive, and based on good consideration.'") (quoting *Bohlman v. Big River Oil Co.*, 124 N.W.2d 835, 837 (N.D. 1963)); *In re Estate of Gustafson*, 287 N.W.2d 700, 702-03 (N.D. 1980) (using rules of contract interpretation found in N.D. Cent. Code chapter 9-07 to determine the intent of parties to a property-settlement agreement incorporated in a judgment of divorce).

North Dakota law provides that intended, but not incidental, beneficiaries have standing to enforce an agreement. N.D. Cent. Code § 9-02-04 states, "A contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it." This statute has been construed "to mean that a party only incidentally benefitted by performance of a contract is not entitled to maintain an action to enforce it." *Hellman v. Thiele*, 413 N.W.2d 321, 325 (N.D. 1987). To determine whether Myers is an intended beneficiary, "we must look to the intentions of the parties to the contract. The intentions of the parties to a contract must be ascertained from the *written contract alone, if possible*, but where the contract is ambiguous it may be explained by reference to the circumstances under

-11-

which it was made." *O'Connell v. Entm't Enters., Inc.*, 317 N.W.2d 385, 388 (N.D. 1982) (emphasis added); *see also* N.D. Cent. Code § 9-07-02 ("The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity.").

Here, the words of the contract alone govern because the language of the Jones-Van Tassel settlement agreement is not ambiguous. The no-retaliation provision prohibits the signatories from "retaliat[ing] with respect to any employment related matter against any former, present, or prospective City or County employee, or individual whose compensation is paid, in whole or in part, by the City or County, who have provided any support to Plaintiff, whether by . . . deposition testimony . . . or any other manner of support." As Richland County State's Attorney, Myers was an individual whose compensation was paid by Richland County. Myers also provided deposition testimony in the Jones-Van Tassel suit. Therefore, Myers is an intended beneficiary of the no-retaliation provision. The district court did not err in holding that Myers has standing to enforce the settlement agreement.

## C. Breach of Contract Claim

We review de novo the district court's grant of summary judgment to Richland County on the breach of contract claim. *Martin v. Am. Airlines, Inc.*, 390 F.3d 601, 606 (8th Cir. 2004). Summary judgment is proper if, viewing the record in the light most favorable to Myers, there is no genuine issue of material fact and Richland County is entitled to judgment as a matter of law. *See id.*; Fed. R. Civ. P. 56(c). We may affirm the district court's grant of summary judgment on any ground supported by the record. *Russell v. Hennepin County*, 420 F.3d 841, 847 (8th Cir. 2005). After reviewing the record, we hold that Myers did not produce sufficient evidence from which a reasonable jury could conclude that Richland County breached the settlement agreement.

First, Myers challenges the district court's holding that in order for Richland County to be liable for breach of the settlement agreement, the actions constituting the breach must have been accomplished by formal action of the Richland County Board of Commissioners ("the Board") or lawfully authorized by the Board.[7] We agree with the district court. North Dakota law provides that "[e]ach organized county is a body corporate for civil and political purposes only. As such, the county may sue and be sued, contract and be contracted with . . . ." N.D. Cent. Code § 11-10-01; *see also* N.D. Cent. Code § 11-11-29 ("A contract shall be entered into . . . only after it has been approved by the vote of a majority of the members of the board of county commissioners. The contract . . . may be signed on behalf of the board by the chairman thereof and the county seal affixed thereto."). The actions of individual commissioners are not tantamount to actions of Richland County. According to the North Dakota Supreme Court, "[T]he board of county commissioners shall act collectively and as a board, and . . . consequently the county is not bound by any action taken by the county commissioners as individuals." *Rolette State Bank v. Rolette County*, 218 N.W. 637, 639 (N.D. 1928); *see also Hart v. Bye*, 86 N.W.2d 635, 638 (N.D. 1957) ("The county is not bound by any action taken by a commissioner or commissioners acting individually."); *City of Minot v. Johnston*, 379 N.W.2d 275, 278 (N.D. 1985) ("The Water Board must act collectively and neither it nor the City as assignee of the easement is bound by any act of an individual member.").

Next, we address the meaning of the word "retaliate" in the settlement agreement's statement that the signatories "will not retaliate with respect to any employment related matter." The district court agreed with Myers that it should use

---

[7]Myers also argues that the district court erred in dismissing the commissioners who were not signatories to the settlement agreement and that they may be held individually liable for breach of the settlement agreement. This argument fails because Myers brought the breach of contract claim against only Richland County, not against the commissioners in their individual capacities. *See supra* note 2.

the plain meaning of the word, but then the court improperly relied on the burden-shifting analysis applicable to retaliation claims as developed under Title VII case law in the Eighth Circuit. North Dakota law directs us to "construe contractual agreements to give effect to the parties' intent, which, if possible, must be ascertained from the writing as a whole. The clear and explicit language of a contract governs its interpretation and words are construed in their ordinary sense." *In re Estate of Littlejohn*, 698 N.W.2d 923, 925-26 (N.D. 2005) (citation omitted); *see also* N.D. Cent. Code § 9-07-09 ("The words of a contract are to be understood in their ordinary and popular sense rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed.").

The no-retaliation provision in the settlement agreement is not ambiguous, and we will use the ordinary meaning of the word "retaliate." The Supreme Court of North Dakota looks to the dictionary to ascertain the ordinary meaning of a term in a contract, "the definition a non law-trained person would attach to the term." *Martin v. Allianz Life Ins. Co. of N. Am.*, 573 N.W.2d 823, 826 (N.D. 1998). The dictionary defines "retaliate" as "to repay (as an injury) in kind; to return like for like; to get revenge." *Merriam-Webster's Collegiate Dictionary* 1063 (11th ed. 2005). Therefore, as applicable to this case, the settlement agreement provides that Richland County cannot seek revenge on Myers with respect to any employment-related matter because he "provided any support" to Jones-Van Tassel "by . . . deposition testimony."

Using the ordinary meaning of "retaliate" and taking into account the actions that could possibly be construed as formal actions of the Board or lawfully authorized by the Board, we hold that Myers has not presented sufficient evidence to overcome summary judgment on the breach of contract claim. Myers has failed to present material evidence upon which a reasonable jury could find that Richland County took certain actions because of Myers's deposition testimony in the Jones-Van Tassel

lawsuit and that those actions caused Myers to lose the election. The voters, not Richland County, decided that Myers would no longer serve as State's Attorney. Moreover, the record contains evidence that prior to Myers's deposition testimony, the Board had disagreements with Myers and was unsatisfied with Myers's work as State's Attorney.

Myers alleges, as an incident of retaliation, the participation of several commissioners in persuading Warren Stokes to stand against Myers in the election for Richland County State's Attorney. Myers argues that this interference with the 2002 election converted an uncontested race for Myers into a contested one, which caused Myers to lose the election. After the Jones-Van Tassel settlement, Commissioner Lynn C. Larsen asked an attorney if he knew of anyone who would be interested in running against Myers, and Commissioners Bryan L. Flaa and Don Holen spoke to Warren Stokes. Commissioner Flaa asked Stokes why nobody would run against Myers for State's Attorney. Stokes told him it was because the position was full-time. Flaa did not discuss the matter with Stokes again until he stopped at Stokes's house on March 31, 2002, to pick up a letter that Stokes wrote to the Board informing them that he would not run if the position was to remain full-time. These actions of individual commissioners were not authorized by the Board and thus cannot be attributed to Richland County.

As part of this claim of retaliation, Myers argues that the conversion of the State's Attorney position to part-time, a formal action of the Board, was part of the inducement for Stokes to run against him for the office. At board meetings on April 1 and April 4, 2002, the commissioners discussed the 1977 resolution making the State's Attorney position full-time, but they failed to rescind the resolution at that time. Nevertheless, Stokes entered the campaign for State's Attorney and defeated Myers. When Stokes was sworn in on January 6, 2003, the Board rescinded the 1977 resolution, thereby changing the position to part-time, and voted not to reduce Stokes's salary. However, this change upon Stokes taking office could not constitute

retaliation with respect to an employment-related matter because it had no impact on Myers. Myers already had been defeated in the election and was no longer in office.

As evidence of retaliation, Myers next points to an investigation regarding his conduct as State's Attorney that was unrelated to the Jones-Van Tassel lawsuit. After the Jones-Van Tassel settlement, some Richland County residents sought recall of Sheriff Harlan Muehler, Commissioner Dave Paulson and Myers. Myers himself urged the Board to appoint special counsel to investigate the allegations and decide whether to file a complaint with the governor seeking removal of any county officials. The Board and Myers agreed not to limit the scope of the investigation to sexual harassment and discrimination. The Board hired James M. Vukelic. In the course of the subsequent investigation, Vukelic met personally with citizens and examined their complaints about Myers: that Myers refused to prosecute certain individuals, improperly urged the Commission to destroy county records, misused county funds and failed to enforce the county's sexual harassment policy. Vukelic concluded in a June 1, 2001, report that none of Myers's behavior constituted misconduct, malfeasance or neglect of duty. There is no evidence that this investigation into Myers's conduct as State's Attorney constituted retaliation for his deposition testimony.

Third, Myers argues that the Board interfered with his role as State's Attorney in various ways. Myers asserts that the Board ignored his legal advice and sought advice from others who were not legally trained, such as the County Auditor. However, the record shows that Myers rarely attended Board meetings. Myers also argues that the Board submitted legal questions directly to the North Dakota Attorney General's office instead of channeling them through Myers. Regarding one such incident raised by Myers, Flaa explained that the employee who asked Flaa to submit a request to the Attorney General's office involving a Sheriff's Department slush fund also told Flaa not to involve Myers or the sheriff. Although Myers took issue with Flaa's explanation, Myers admitted that ultimately he allowed the Attorney General's

office to proceed with that investigation. Finally, Myers asserts that the Board submitted two civil complaints that had been filed against Richland County directly to the North Dakota Insurance Reserve Fund (NDIRF) instead of to him. Myers agreed, however, that civil complaints properly went to the NDIRF for appointment of outside counsel and that it was important for NDIRF to receive the complaints as soon as possible. Furthermore, on those two occasions when the complaints were given directly to the NDIRF, Myers received a copy of the complaints within a week. None of these "interferences" raises a genuine issue of material fact that the Board retaliated against Myers with respect to any employment-related matter as a result of his testimony in the Jones-Van Tassel lawsuit.

Finally, Myers points to a letter given to Richland County employees that he believed implicitly threatened all County individuals who gave support to or testified on behalf of Jones-Van Tassel. Richland County Engineer, Tim Schulte, wrote a letter to Commissioner Flaa, discussing his opinions about the aftermath of the Jones-Van Tassel lawsuit and the gossip and infighting in Richland County. In February 2001, Commissioner Flaa disseminated a portion of Schulte's letter to county employees at a meeting of the Board, with his own introductory paragraph stating in part that he had received a letter that he wanted to share, that it "points to the problem as the author sees it," and that "if it strikes a nerve with you as you read this, you may want to think about your involvement in these issues." Several days later, counsel for Jones-Van Tassel informed the Board that the letter could be construed as a violation of the settlement agreement, and Schulte forwarded his original letter in its entirety to all county employees to give context to his message. We do not find this letter to constitute retaliation against Myers with respect to any employment-related matter. The letter disseminated at the meeting was not written by the Board but by the County Engineer as an expression of his thoughts and opinions. Even if the Board did ratify the letter as its own, the letter does not make any reference to Myers and there is no evidence that Myers suffered any negative employment consequences as a result of the letter.

In sum, Myers failed to raise a triable question of material fact as to whether Richland County retaliated with respect to any employment-related matter against Myers because of his deposition testimony in the Jones-Van Tassel lawsuit. Myers lost the election because he did not receive more votes than his opponent, not due to any actions of the Board. Accordingly, summary judgment on Myers's breach of contract claim is appropriate.

## III. CONCLUSION

For the reasons discussed above, we affirm the district court's grant of summary judgment in favor of Richland County as to the breach of contract claim. We vacate the district court's judgment on the IIED and defamation claims and remand to the district court with directions to dismiss those two claims for lack of jurisdiction.

_____